## DŒPFNER and Another *v*. THE STATE, on the Relation and for the Use of ALTLAND.

JUSTICE OF THE PEACE.—*Contempt.*—A constable, having executions in his hands, the return day of which had passed, and money having been collected upon some of them, was required by the justice of the peace who had issued them to return them, but declining to do so immediately, he was committed for contempt to the county jail by the justice, although the trial of no cause was in progress.

*Held*, in a suit for this imprisonment, against the justice and the surety on his official bond, that the action could not be maintained against the surety, the act ' constituting no breach of the bond (DOWNEY, C. J., dissenting).

*Held*, also, that the executions with the returns thereon should have been admitted in evidence when offered by the defendants, to show the *animus* of the justice in what he did.

APPEAL from the Marion Common Pleas.

PER CURIAM.—Dœpfner was a justice of the peace, and the other appellant, Rhodius, was the security on his official bond. Altland was a constable, and had in his hands several executions, the return day of which had passed, and on some of which he had collected or received money, which executions had been issued by Dœpfner, on judgments on his docket. Altland called at the office of Doepfner, and returned one of the executions on which he had collected some money. Dœpfner then required him to return the other executions, a list of·which he had before him. He declined to do so then, but promised to do so in the afternoon; and was about going out of the office, when Dœpfner ordered his arrest by one Wuest, a man who was present, for contempt of the authority of his court. Dœpfner commenced writing an entry on his docket in the matter of the contempt, and Altland commenced making out the returns on the executions, during or before which time Dœpfner informed him that he should send him to jail for three hours for such contempt. Dœpfner having completed the entry on his docket, made out a *mittimus* for the commitment of Altland to the county jail, and appointed Wuest to execute the same.

Altland then handed the executions to Dœpfner, and was taken to jail by Wuest, where he was imprisoned for three hours, according to the *mittimus.* Dœpfner had, both orally and in writing, requested Altland to return the executions prior to the proceeding for contempt. Dœpfner was not engaged in the trial of any cause at the time when he so ordered Altland into custody and committed him to the jail.

Altland brought this action in the name of the State, on his relation, against Dœpfner and Rhodius, his security on his official bond, to recover damages for the injury sustained by him. In his complaint he sets out the bond and condition, and, for a breach, alleges that Dœpfner did not faithfully discharge his duties as such justice of the peace, in this, that he did, on, etc., while the plaintiff, who was then and there a constable, etc., was in the office of said Dœpfner, unlawfully, wrongfully, oppressively, and corruptly, by color of his office, etc., cause the plaintiff to 'be arrested on a pretended charge of contempt, and then and there caused him to be detained in custody and imprisoned in his office for the space of one hour, during which time the said Dœpfner unlawfully, wrongfully, oppressively, and corruptly, and without any probable cause whatever, adjudged the plaintiff guilty of said pretended charge, and that he be imprisoned in the county jail for the space of three hours, and that he pay costs, etc.; and he then for the pretended cause aforesaid, committed him to jail for the space of three hours, against his will and consent; that at the said time when, etc., there was no judicial proceeding in progress, before said Dœpfner, as such justice of the peace, and he well knew that all of said proceedings were unlawful and oppressive.

The defendants filed separate demurrers to the complaint, which alleged that the complaint did not state facts sufficient to constitute a cause of action. These demurrers were overruled and the point was reserved by exception. The defendants then answered separately, by a general denial. Afterwards they filed a second paragraph, which, however, we

Dœpfner and Another *v*. The State, on the Relation and for the Use of Altland.

need not more particularly notice, as no question with reference to it need be decided by us.

There was a trial by jury, and a verdict and judgment for the plaintiff, a motion for a new trial having been overruled.

The first question is as to the sufficiency of the complaint. A majority of the court are of the opinion that the justice of the peace had no jurisdiction or power to cause the arrest and imprisonment of the constable; that it was an act for which, as justice of the peace, he had no legal authority whatever; and therefore, as the security is only bound. that he shall faithfully discharge his duties as justice of the peace, and as this was not a duty which he did or could legally do as justice of the peace, that the surety is not responsible, and that the demurrer to the complaint should have been sustained.

The defendants, on the trial, offered in evidence the executions and returns on them, some sixteen in number, which were in the hands of the constable, and which he had not returned, in order to show, so far as they would show, the grounds on which the justice acted in ordering the arrest and imprisonment of the appellee, but the court refused to allow them to be given in evidence. We think they should have been allowed to go in evidence to show the *animus* of the justice in what he did.

The judgment is reversed, with costs, and the cause remanded.

Downey, C. J.—I am unable to concur in the opinion of the majority of the court in holding the complaint bad.

The condition of the bond of the justice on which the suit is brought is, "that the said Charles F. Dœpfner shall faithfully discharge his duties as such justice, and pay over on demand to the person entitled or authorized to receive the same, all moneys that may come to his hands as such justice of the peace, during his continuance in office," etc. The question may not be the same that it would be if the

justice were sued alone, and not on the bond. There may be many acts for which a suit might be sustained against the justice, as an individual, which would afford no cause of action against him and his securities on his bond.

In the case of *The State, on relation of Conley*, v. *Flinn*, 3 Blackf. 72, the action was against the justice of the peace and his sureties, on their bond, and the breach was that the principal had "acted illegally, oppressively, and corruptly in his office, in this :" setting out the particulars of such malfeasance. The court held that if a justice of the peace, in the discharge of any of his ministerial or judicial duties, act corruptly, to the injury of a party, his conduct is a breach of the condition of his official bond. And the court held in that case, that it made no difference whether the act was ministerial or judicial; the securities and the justice were equally liable, if the act was done corruptly. That the sureties were responsible for all acts of the justice, committed by virtue of his office, and for which, exclusive of the bond, he would be individually responsible.

In *The State, on relation of Robinson*, v. *Littlefield*, 4 Blackf. 129, which was an action against the justice of the peace and his securities, on their bond, two breaches were assigned; first, that the justice, while acting as such, did not faithfully perform his duties as prescribed by law; and second, that the justice issued a *capias ad respondendum* against the relator on a charge of his having assaulted the justice; that the relator was accordingly arrested and brought before the same justice; that the justice unlawfully, and oppressively refused to the relator a change of venue in the cause, and also refused him a trial by jury; that the justice, for the supposed assault upon *himself*, rendered a judgment for three dollars with costs against the relator; and further, that during the said trial, the justice, without cause, fined the relator three dollars and costs for an alleged contempt, issued an execution against him for the same, and thereby caused him to be imprisoned for twenty-four hours.

The court held the assignments of breaches bad, and

remarking with reference to the second, said: "Assuming the justice to have acted oppressively and unlawfully as the declaration alleges, still that does not show a cause of action against the sureties. The declaration should have stated that the justice had acted corruptly, or that he knew his conduct to be unlawful. In cases of this kind the sureties are not liable for the unintentional mistakes in judgment made by the justice, however oppressively such mistakes may have operated against the party complaining."

In *Gowing* v. *Gowgill,* 12 Iowa, 495, where the action was on the bond, and the substance of the breach was that the justice, through favor, and with intent to defraud the plaintiff, heard and determined a cause at 10 o'clock a. m., of the day, before the hour fixed, without the consent of the plaintiff, and that when the proper hour of trial arrived, he refused to set aside the judgment, it was held that the action would lie on the bond.

In *Horton* v. *Auchmoody,* 7 Wend. 200, it was held that when a justice acts without acquiring jurisdiction, he is a trespasser; but having jurisdiction, an error in judgment does not subject him to an action. He is entitled to the protection afforded to a judge of a court of record. See, also, *Butler* v. *Potter,* 17 Johns. 145; *Stewart* v. *Hawley,* 21 Wend. 552.

In *Tompkins* v. *Sands,* 8 Wend. 462, the court discriminates between acts which are ministerial and those that are judicial, saying that " it may sometimes be difficult to determine whether an act is judicial or ministerial. A justice of the peace performs acts of both kinds, and which are clearly distinguishable. He issues process in the first instance, and in doing so he acts ministerially, his judgment is not at all exercised. When the parties appear before him, and the cause is heard, he renders judgment; he then acts judicially. After judgment, he issues execution; he then again acts ministerially."

The court then, after a review of some of the authorities, concludes: "On a review of the cases, the principle must

be considered as settled, that for a judicial act, no action lies, but for an injury arising from the misfeasance or nonfeasance of a ministerial office, the party has redress in an action on the case; but in all cases where the defendant is sued for an act in which he is bound to exercise his discretion, the action will not be sustained unless it appear that the act complained of was done wilfully and maliciously. The strongest charge in the declaration in this case is, that the defendant, acting as justice of the peace, has unjustly and oppressively prevented the plaintiff from appealing and thereby reversing a judgment rendered against him, etc. I incline to think this equal to a charge of corruption." But the case was made to turn on the point that the act which the justice had failed and refused to perform—the approval of an appeal bond—was a ministerial, and not a judicial act.

In *Gregory* v. *Brown,* 4 Bibb, 28, it is decided that no suit lies against a justice of the peace for an act done judicially and within the scope of his jurisdiction, unless he acts corruptly or from impure motives.

Following these cases, and especially those in this court, I am of the opinion that the complaint in this case was sufficient. I do not think the question turns on the fact whether the justice of the peace had jurisdiction, or not, of the matter before him. He was acting in the matter as a justice of the peace, and claiming to have jurisdiction. He ordered the arrest of Altland, entered the matter relating to the contempt on his docket, and, as a justice of the peace, adjudged Altland guilty of the contempt, made out and signed the *mittimus,* and appointed Wuest to act as constable. I think that if he acted unlawfully, wrongfully, oppressively, and corruptly, as alleged in the complaint; while professedly acting as a justice of the peace, to the injury and damage of the appellee, he and his surety are, under these decisions, liable to be sued on their bond, whether he had rightfully and really jurisdiction of the matter or not. But I do not think it clear that he had not jurisdiction. It seems to be settled, that courts of all grades have power

to punish, by fine and imprisonment, their officers who shall abuse the process of the court or fail to execute and return it according to law and the command of the writ or process. This is a power which would seem to be necessary to the existence of such courts and the proper exercise of their allotted functions. See *The State, on the prosecution of Leavenworth,* v. *Tipton,* 1 Blackf. 166; 2 Hawk. P. C. 5.

It is provided by statute, in this State, that "justices shall have power to subpœna witnesses and enforce their attendance by attachment and fine, not exceeding five dollars; to enforce order when judicial proceedings are in progress before them, by fine not exceeding five dollars, and imprisonment not exceeding three hours." 2 G. & H. 589, sec. 46. I am of the opinion, however, that this is not an enumeration of all the cases in which a justice may fine or imprison for contempt. May he not punish those who have been summoned to appear before him as jurors and have failed to do so? May he not attach and punish those who obstruct the execution of his process, or prevent the attendance of witnesses? If he may, then there are cases where he may punish for contempt which are not enumerated in the statute. The fact that the justice in this case went about the business in an unusual or awkward manner, does not affect this question. It is the power to do the act, and not the manner of it, which is in question.

The next question relates to the sufficiency of the evidence to sustain the verdict. It will be seen from what I have already said, and from the cases cited, that it was essential, in order to make out a cause of action on the bond against the justice and his surety, that he should have acted corruptly. From the facts in the case, it fully appears that Altland, the constable, by failing to return the executions, the return day of which had already passed, and to pay over the money collected, had been guilty of a gross violation of official duty and disregard of the command of the writs, which required him not only to execute them, but also to return them within a specified time. He had failed to per-

form these duties, had been reminded of his failure, and no-
tified, orally and in writing, to do so, and still refused.
After all this, and in good faith, so far as I can see, the jus-
tice proceeded against him for contempt as stated.   I see no
evidence of the corruption which is alleged in the complaint,
and required by law to make the defendants liable on the
bond.

I think the judgment ought to be reversed for insuffi-
ciency of the evidence, and for the improper exclusion of
the executions and the returns thereon as evidence, but not
on account of the insufficiency of the complaint.

*J. Hanna* and *F. Knefler*, for appellants.

*J. S. Harvey*, for appellee.