THE STATE, EX REL. THE LOGANSPORT NATIONAL
BANK, *v.* KENT ET AL.

OFFICIAL BOND.—*Liability of Surety.*—*County Auditor.*—A county auditor, as such, fraudulently issued an order, payable to himself, on the county treasurer, for a balance of fees falsely pretended therein to have been allowed him as auditor by the board of county commissioners, and presented it to said treasurer, who indorsed it, "Not paid for want of funds." And said auditor afterwards presented it to a bank, which, in good faith, relying on the genuineness of the order, and without notice of its fraudulent character, advanced money to the auditor upon the deposit of said order as security therefor, which money becoming due and being unpaid, the bank demanded of said treasurer payment of said order, which he refused.

*Held,* in an action, brought by said bank as relator, upon the official bond of said auditor, conditioned for the faithful and impartial discharge of the duties of his office according to law, that the act which resulted in

damage to the relator, being the presentation to it of the order and the obtaining of said money thereby, was not an official act, and the sureties on said bond were not liable for said damage. WORDEN and PETTIT, JJ., dissented.

From the Newton Circuit Court.

*D. P. Baldwin*, for appellant.

*C. H. Test, D. V. Burns* and *H. Burns*, for appellees.

DOWNEY, C. J. — This was an action by the appellant against Alexander Ekey, Alexander J. Kent, Peter Kline, William Williams and John Ryan. The action was predicated on the official bond of Ekey, as auditor of Newton county. The condition of the bond is as follows, after the recitals:

"Now, if the said Alexander Ekey shall faithfully and impartially discharge the duties of his office according to law, then this obligation shall be void, else, to remain in full force."

The complaint is in two paragraphs. The first states the election of Ekey in October, 1867, for four years, the execution of the bond on the 2d day of December following, by Ekey and his said sureties, and the acknowledgement and approval of the same; that Ekey took the oath, and assumed the duties of the office; that the relator is a corporation, etc. It is further stated, that Ekey did not faithfully discharge his duties as auditor of said county, as provided in said bond, but defaulted, in this, to wit: At the June term, 1871, of the board of commissioners of said county, the county owed Ekey nothing; but, on the contrary, he owed the county five hundred dollars, for an overdrawn account for fees and services theretofore pretended by him to have been rendered to and for the county; that, fraudulently concealing the overdrafts and indebtedness, on the 10th of June, 1871, he procured an allowance from the board, for services up to February 22d, 1871, of three hundred and fifty-five dollars and seventy-one cents, and the same was so entered on the order-book and signed by the commissioners; that

Ekey did, then and there, fraudulently and wrongfully raise said allowance to nine hundred and fifty-five dollars and seventy-one cents, by erasing the figure three, and changing the same to a nine; that he drew an order, number forty-six, for two hundred dollars, in his own favor, June 15th, 1871, which, on June 17th, 1871, he presented to the treasurer, who indorsed it, "Not paid for want of funds;" that he drew order number forty-eight, for two hundred dollars, on the 12th day of June, 1871, which was paid on the 14th day of June, 1871; that on the 15th day of June, 1871, Ekey falsely and fraudulently, and in violation of his duty as auditor, as aforesaid, and contrary to the terms of his bond, drew, in his own favor, an order, as follows:

"No. 51.                                        $800.

"AUDITOR'S OFFICE, KENTLAND, IND.,
"June 15th, 1871.

"Treasurer of Newton county, Ind.:

"Pay to Alexander Ekey, eight hundred dollars and —— cents, for balance fees as auditor, from June 1st, 1870, to February 22d, 1871, as allowed by the board of commissioners of said county at their June term, 1871.

"ALEXANDER EKEY,
"Auditor of Newton County."

Which order he presented to the treasurer, who indorsed the same, "June 20th, 1871. Not paid for want of funds. A. A. Myers, T. N. Co."

It is further stated, that Ekey, then and there, fraudulently and falsely, and in violation of his duty and the terms of his bond, entered upon the register of orders, as order number fifty-one, dated June 15th, 1871, an order of four hundred dollars, in favor of H. K. Warren, for services as sheriff. All of which acts, it is stated, were done by Ekey under color and by virtue of his possession of said office and the books and papers thereof; that, being so in possession of said order, Ekey, June 20th, 1871, presented the same to relator, as a valid and subsisting obligation, and the relator, relying upon the same and the recitals thereof and

signatures thereto, innocently and without notice of any of the foregoing frauds, upon said day, advanced to said Ekey, upon deposit of said order with her as security therefor, the full amount of said order, to wit, eight hundred dollars, which advance was made in good faith; that the said sum is past due and wholly unpaid; that relator has demanded of the treasurer of said county payment of the order, which he has refused, and there is now due to the relator twelve hundred dollars. By reason of which, a cause of action has accrued to relator on said bond, to the amount of said order and interest, etc. Wherefore, etc.

The second paragraph is like the first, except that it counts upon an order for four hundred dollars, issued under the same circumstances.

On the coming of the parties into court, the death of Ryan was suggested, the case as to Ekey and Williams was continued, and Kent and Kline demurred, separately, to each paragraph of the complaint, on the ground that they did not state facts sufficient to constitute a cause of action. This demurrer was sustained by the court, and there was judgment for the defendants.

The errors assigned are:

1. Sustaining the demurrer to the first paragraph of the complaint.

2. Sustaining the demurrer to the second paragraph of the complaint.

3. Rendering judgment against the relator for costs.

The only question is, whether the acts of Ekey, in issuing the orders in question, and obtaining the money thereon from the bank, are such as to render the sureties liable on the bond.

The statute does not provide what shall be the terms of the bond of a county auditor. 1 G. & H. 122, sec. 2. We presume, and therefore assume, that it is intended to secure the faithful performance of the duties of his office.

Counsel for appellant relies upon sections three and four of the same act. They are as follows:

" Sec. 3. The auditor, by virtue of his office, shall be clerk of the board of county commissioners of his county, and shall keep an accurate record of all the corporate proceedings of such board, and shall preserve the documents, books, records, maps and papers deposited in his office, and at the expiration of his term, deliver the same to his successor.

" Sec. 4. He shall examine and settle all accounts and demands chargeable against his county, which are not directed to be settled and allowed by some other tribunal or person; and for all such sums of money settled and allowed by himself, such other tribunal or person, or where the same is fixed by law, he shall issue his orders on the treasurer of the county, payable to the person entitled thereto, which orders shall be numbered, progressively, and the number, date, and amount of each, and to whom payable, and the purpose for what" [which] " drawn, shall, at the time of issuing the same, be entered in a book kept for that purpose. "

Counsel urge that the sureties undertake for their principal:

" 1. That he shall correctly keep the records of the board of county commissioners of the county.

" 2. That he shall issue no orders except in the cases provided for by law, and not make use of the records and blank orders in his possession, except for the purposes provided for in section 4 of the auditor's act.

" 3. That, for the information of his principal, the board of commissioners, he shall keep an accurate register of all orders actually issued."

Counsel for appellee refer to *Carey* v. *The State, ex rel.*, etc., 34 Ind. 105; *Dœpfner* v. *The State, ex rel.*, etc., 36 Ind. 111; and *Jenkins* v. *Lemonds*, 29 Ind. 294; and they contend that the sureties of an officer are only bound to see that the officer performs, correctly, such acts as the law makes it his duty to perform, and that they are not liable for acts that he does, which he is not authorized by law to perform; that it

is not alleged that Ekey failed to perform any official duty, and that, therefore, the sureties are not liable.

It is further urged, that, supposing Ekey was acting officially in issuing the order, he was not so acting when he presented it to the treasurer and obtained his indorsement, nor when he presented the order to the bank and obtained the money thereon; that the relator relied upon the fact that Ekey had possession of the orders, which appeared on their face to be valid, and did not examine the records of the auditor's office, or have any knowledge thereof, and was not, therefore, misled thereby; that, as the relator did not examine the records of the auditor's office, it cannot be successfully claimed that she was, in any way, damaged by the false entries made therein.

We do not think it necessary to put the case on the ground that the officers of the bank should have examined the records in the auditor's office; for it seems to us clear that the injury of which the bank complains is not one for which the sureties are responsible. Conceding that the issuing of the orders was an official act, and that, for any damages resulting from that act, the sureties would be liable to any one damaged thereby, still, this is not the act which damaged the bank. Had that been the only act done by the auditor, it is clear that the bank would have suffered no inconvenience. The act of the auditor in having the treasurer make the indorsement on the order was not an official act as auditor. Indeed, we do not see that that act could result in damage to any one. Its only effect was to cause the order to bear interest from the date of such indorsement. 1 G. & H. 641, sec. 8. But the act which resulted in the damage sustained by the bank was the presentation and sale of the order to it, and thereby obtaining the money of the bank. We think it quite clear that this was not an official act. It was an act which might as well have been done by any other person, had he held the order, as by the auditor. It had no relation whatever to his official duties, and could not, with any reason, have been so understood by those act-

ing for the bank. The liability of sureties is not to be extended, by implication, beyond the terms of their contract. The undertaking is to receive a strict interpretation, and not to extend beyond the fair scope of its terms. *The United States* v. *Boyd,* 15 Pet. 187.

As bearing upon this question, we may cite the following cases in this court, in addition to those cited by counsel for appellee: *The State, ex rel. Arnold,* v. *Givan,* 45 Ind. 267, and *The State, ex rel. Roberts,* v. *Fleming,* 46 Ind. 206.

In our opinion, the court committed no error in sustaining the demurrer to the complaint.

The judgment is affirmed, with costs.

WORDEN and PETTIT, JJ., dissenting.

We do not concur in the opinion of the majority of the court in this case. The orders alleged to have been falsely and fraudulently issued by the auditor were issued under color of his official authority. The issuing of them was, in our opinion, a breach of his official bond, and for such breach, any person, being injured thereby, may recover damages. It may be conceded that the auditor did not, as auditor, present the orders to the treasurer for redemption or indorsement, or transfer them to the relator. These things, it may be assumed, he did in his individual capacity. But these things he could not have done, if he had not, in his official capacity, issued the orders. If the auditor had passed the orders to some one else, and they had afterwards, in due course of business, come to the hands of the relator for value, we think the sureties on the bond would be liable to the relator, because the relator could not have been thus defrauded, had not the orders been issued in violation of law and the duty of the auditor.