THE STATE, EX REL. BRUNS, *v.* CLAUSMEIER ET AL.

[No. 18,434. Filed May 29, 1900.]

SHERIFF.—*Prisoner.*—*Taking Photograph.*—*Damages.*—A sheriff may take the photograph of a prisoner, ascertain his height, weight, name, residence, place of birth, occupation, and the color of his eyes, hair, and beard, if he deem it necessary to secure his safe keeping, or to recapture him more readily should he escape, without becoming liable in damages therefor, where no force or violence is used. *pp. 600-603.* ·

SAME.—*Circulating Photograph and Description of Prisoner.*—*Liability on Official Bond.*—A sheriff in sending out photographs and descriptions of a prisoner in his custody to police departments and individuals is not acting in an official capacity and is not liable on his official bond therefor. *pp. 603, 604.*

From the Allen Circuit Court. *Affirmed.*

*W. M. Ninde, B. F. Ninde* and *C. Holder,* for appellant. *Morris, Barrett* and *Morris,* for appellees.

MONKS, J.—This action was brought by the relator against appellee, Clausmeier, on his official bond as sheriff, and the other appellees, sureties on said bond, to recover damages for an alleged breach thereof. A demurrer for want of facts was sustained to the complaint, and, the relator refusing to plead further, judgment was rendered in favor of appellees.

It is alleged in the complaint that while the relator was confined in the jail of Allen county, and in the custody of said Clausmeier as sheriff, on a charge of forgery, said Clausmeier, on the 13th day of November, 1896, "without the consent, and against the wish of said relator, compelled him, by force of commands, and threatening physical compulsion, to come forth out of his cell in said jail into the office of said jail, and then and there, intentionally, wrongfully, unlawfully, and maliciously took the picture of said relator, and on the same day, without the consent and against the wish and notwithstanding the protest of relator; said Clausmeier weighed and measured said relator, and by observation of the body of said relator, and by inquiry of him, and by means of records, obtained a personal description of relator;" that on said 13th day of November, 1896, and thereafter, said Clausmeier "maliciously intending to ruin the relator's fair name and reputation, and to bring said relator into public infamy, disgrace, and scandal, by holding said relator up to scorn, ridicule, contempt, and execration, and to impair his enjoyment of general society by imputing and implying that said relator had committed a crime and was a rogue and a criminal, by associating the picture of the relator with the pictures of criminals, and representing the said relator as a criminal and as a person whom the police should watch, and whom the officers of the law generally should observe and watch more critically than said officers and said police do mankind generally who are not known as criminals, by placing the picture of said relator on cards which are used for mounting the pictures of

criminals, and using said pictures for the express and sole purpose of holding said relator forth as a criminal, on said day did maliciously and falsely make and publish of and concerning the relator the following false, scandalous, malicious, and defamatory words, and picture of said relator in connection therewith [The description of the relator, and the charge against him, and by whom he was arrested, as shown on the back of said picture, are set forth in the complaint]; that the pictures of persons taken and mounted as aforesaid on cards of that style, with the words and combination of words printed and written thereon, as a whole, when exhibited and used as these were, have a definite and well known meaning that said persons are criminals and rogues, and that said pictures and words make what are well and popularly known as the Rogues Gallery; that said Clausmeier, before the relator had any opportunity to prove his innocence of the charge for which he was committed, wrongfully, unlawfully, and maliciously caused large numbers of the picture of said relator, and said words and combination of words on the reverse side thereof, to be sent and placed in the police department of the city of Ft. Wayne, and to divers persons to the relator unknown, and has widely published the libel here complained of; that said relator was innocent of said charge, and was afterwards honorably acquitted of the said charge placed against him. Whereby and by means of which acts aforesaid said relator has been greatly prejudiced in his credit and reputation, and brought into public scandal, infamy, and disgrace, and has suffered in his good name, fame, and reputation, and has suffered damage thereby," etc.

It is the duty of a sheriff to confine in jail and safely keep all persons in his custody awaiting trial on a charge of crime until lawfully discharged, and, if they escape, to pursue and recapture them. A sheriff in making an arrest for a felony on a warrant has the right to exercise a discretion, not only as to the means taken to apprehend the

person named in the warrant, but also as to the means necessary to keep him safe and secure after such apprehension until lawfully discharged; and he has the right to take such steps and adopt such measure as in his discretion may appear to be necessary to the identification and recapture of persons in his custody if they should escape. Unless this discretion is abused through malice, wantonness, or a reckless disregard for and a selfish indifference to the common dictates of humanity, the officer is not liable. *Firestone* v. *Rice*, 71 Mich. 377, 38 N. W. 885, 15 Am. St. 266; *Diers* v. *Mallon*, 46 Neb. 121, 64 N. W. 722, 50 Am. St. 598. It is the duty of the said officer to search the person and take from him all money or other articles that may be used as evidence against him at the trial. *Rusher* v. *State*, 94 Ga. 363, 21 S. E. 593, 47 Am. St. 175, and note p. 180. And he may take from him any dangerous weapons, or anything else that said officer may, in his discretion, deem necessary to his own or the public safety, or for the safe-keeping of the prisoner, and to prevent his escape; and such property, whether goods or money, he holds subject to the order of the court. *Closson* v. *Morrison*, 47 N. H. 482, 93 Am. Dec. 459; *Commercial, etc., Bank* v. *McLeod*, 65 Iowa 665, 19 N. W. 329, 22 N. W. 919, 54 Am. Rep. 36; *Reifsnyder* v. *Lee*, 44 Iowa 101, 24 Am. Rep. 733; *Holker* v. *Hennessey*, 141 Mo. 527, 540, 42 S. W. 1090, 64 Am. St. 524, 532, and note p. 537, 39 L. R. A. 165; Gillett's Crim. Law (2nd ed.), §158.

In *Closson* v. *Morrison*, *supra*, and *Holker* v. *Hennessey*, *supra*, it was held that said officer might not only take any deadly weapon he might find on the person, but also money or other articles of value found upon the person, though not connected with the crime for which he was arrested and could not be used as evidence on the trial thereof, by means of which, if left in his possession, he might procure his escape, or obtain tools, implements, or weapons with which to effect his escape.

It would seem, therefore, if, in the discretion of the sheriff he should deem it necessary to the safe-keeping of a prisoner, and to prevent his escape, or to enable him the more readily to retake the prisoner if he should escape, to take his photograph, and a measurement of his height, and ascertain his weight, name, residence, place of birth, occupation, color of his eyes, hair, and beard, as was done in this case, he could lawfully do so. The complaint does not charge that any physical force was used to induce the relator to have his negative taken, or to furnish the sheriff the information above mentioned not obtainable by observation.

It is evident that the substantial cause of action set forth in the complaint is an alleged libel of the relator by the appellee, Clausmeier, in the publication of said pictures and the writing on the backs thereof, by sending the same to the police department of Ft. Wayne, and to the divers persons to the relator unknown. Conceding, without deciding, that if a sheriff commits an assault and battery upon a person in his custody, or fails to use ordinary care to protect him against acts of violence from others, he and his sureties are liable on his official bond to such person therefor, yet it does not follow that a sheriff and his sureties are liable on his official bond for libelous words published by said sheriff of and concerning a person in his custody. If a sheriff have a person in his custody on a charge of crime, and orally, or in writing, uses language concerning said person which is slanderous or libelous *per se*, while he may be liable to an action therefor, there is no liability on his official bond on account thereof. A person who is a sheriff in speaking or writing such language, under such circumstances, is not guilty of any misfeasance, malfeasance, or nonfeasance as such officer. He is neither performing an official duty in a proper or improper manner, nor doing any act whatever as an officer.

It is evident that said Clausmeier, in sending said photographs with the writing on the backs thereof, was not acting

either *virtute officii* or *colore officii*. Under such circumstances, there is no liability on an official bond. *State, ex rel.*, v. *Givan*, 45 Ind. 267; *State, ex rel.*, v. *Kent*, 53 Ind. 112. It is unnecessary, therefore, to determine whether or not the photographs and the words thereon were libelous when considered in connection with the other allegations of the complaint. Judgment affirmed.