MANUEL DE MELLO *v.* W. A. GABRIELSON
AND JOHN DOE PICKARD.

No. 2320.

SUBMITTED JULY 6, 1937.                    DECIDED JANUARY 28, 1938.

COKE, C. J., BANKS AND PETERS, JJ.

OPINION OF THE COURT BY BANKS, J.

This is an action against the defendants for the recovery of damages alleged to have been caused by the unlawful arrest and imprisonment of plaintiff. The defendant Gabrielson is chief of police of the City and County of Honolulu and his codefendant Pickard, a police officer of the city and county. There was a verdict in favor of the plaintiff against the defendant Gabrielson alone in the sum of $100. Gabrielson brings the case to this court on exceptions.

Some time before the institution of the instant case Gabrielson, in response to complaints that had previously been made to him by a man and woman that Manuel De Mello, the plaintiff, had on several occasions addressed to them on the public streets of Honolulu insulting and obscene language and also had made threats of violence, left instructions with a police officer to locate De Mello and inform him that Gabrielson wished to see him at police headquarters. Pickard, who was a police officer and one of the defendants,

located De Mello on Fort Street in Honolulu and after some conversation took De Mello into his automobile and conducted him to police headquarters where he was interviewed by Gabrielson in his private office. After this interview De Mello's photograph and fingerprints were taken by a police officer under Gabrielson's instructions. De Mello then left police headquarters and went his way without further interruption.

De Mello gave the following version of what occurred at the time of his alleged arrest. He was standing near the corner of Fort and Hotel Streets talking to a friend when Fraga, a sergeant of police, informed him that the "chief" wanted to see him. De Mello then inquired of Fraga whether he had a warrant. Upon Fraga's replying that he did not De Mello refused to go to the police station. Fraga then left.

A few minutes later Pickard arrived in an automobile and called to De Mello. De Mello walked over to the car in which Pickard was sitting and was informed by Pickard that the "chief" wanted to see him. De Mello inquired whether he (Pickard) had a warrant. Pickard replied that he had no warrant but had orders to take De Mello to the police station. De Mello then said he would not go without a warrant. Pickard replied: "I have to take you down; it's orders, I have to take you down." Thereupon De Mello entered Pickard's car without further discussion.

Police officer Pickard gave the following testimony: "I was at the complaint desk at the police station when Officer Kekuewa instructed me to go to Fort and Hotel Streets and meet former Police Sergeant Charles Fraga because he had De Mello there with him. I proceeded there at once. Upon my arrival there I saw De Mello and Fraga standing on the sidewalk. The place was all blocked up so I had to park double right near the Eastman Kodak I think it was, close to Benson-Smith, and Fraga and De Mello approached my

car. As they were coming, both of them were coming, I did not hear what they were saying, and when he got to my car De Mello said, 'Hello Pickard, what does the chief want to see me for?' I said 'I don't know, all he told me he want to see you.' He said 'Well,' he says, 'What for?' I say 'I don't know, he want to see you, that's all I know. He said 'Well, let's go, let's see what he wants.' I opened the door of the car and let him in and Fraga and me left and he went in directly to Benson-Smith and so I drove up Fort street place, after leaving the place ewa on Hotel, and down Bethel, on Bethel street between Hotel and King, he asked me again 'What does the chief want?' and I say I didn't know. He said 'Well,' I can't recollect his exact words— but he said he has a hunch over some old trouble with his former girl friend or something; exact word he said I don't know. Drove right down to the police station, parked my car, both of us got out, at the same time started to walk like two friends, walked in the station, up the stairs and I saw Kekuewa standing there and I waved at him and I said (indicating) 'De Mello.' In the meantime I kept walking in the chief's office, got in the chief's office. The secretary was in. I asked for the chief. He said the chief was out for lunch. I told De Mello 'If you don't mind waiting for a little while, the chief will be in pretty soon.' He said 'Okay.' I left him there. On the way out, coming up the main stairs, I saw the chief coming in. I said 'De Mello wait there for you.' He said 'Okay,' and I went on about my business. That's all that happened with him." Pickard further testified that De Mello had not asked him whether he had a warrant of arrest.

In this state of the evidence the jury was, by agreement of the parties, instructed as follows: "If you find under the evidence that the Plaintiff consented to the acts of the Defendant Pickard without being coerced thereto by threats,

expressed or implied, then you will find your verdict for such defendant."

The failure of the jury to return a verdict against the defendant Pickard is conclusive that they did not believe under the evidence that De Mello accompanied Pickard to the police station under coercion but did so voluntarily. The evidence is without conflict that after De Mello reached the police station Gabrielson informed him of the complaint that had been made against him and warned him that it was easier to get into trouble than to get out of it. Gabrielson then directed a police officer to get De Mello's fingerprints and photograph and this was accordingly done. The evidence as to whether De Mello voluntarily consented to this proceeding or whether he yielded under duress and compulsion is conflicting. Gabrielson testified in substance that he asked De Mello if he would consent to have his fingerprints and photograph taken and that De Mello replied in the affirmative. De Mello's testimony was to the effect that he did not voluntarily consent but objected and only yielded when Gabrielson instructed Rodenhurst, the fingerprint expert, in the hearing of De Mello, to throw him (De Mello) into prison if he refused.

This conflict in the evidence required the submission of the question to the jury which was accordingly done by the following instruction, which was given also by agreement: "If you find that the Plaintiff consented to the acts directed or ordered by Defendant Gabrielson without being coerced thereto by threats, express or implied, then you will find your verdict for such Defendant. In other words, willing and voluntary submission to interviewing a police officer, to accompanying him, to being photographed or fingerprinted, if not produced by means of threats, express or implied, is a defense to this action, if you find such a situation is supported by the evidence."

The verdict which was rendered against Gabrielson on

the issue presented by this instruction is conclusive that the jury believed from the evidence that De Mello's detention and the taking of his fingerprints and photograph were not voluntarily consented to but were induced by a threat of imprisonment if he refused.

It is contended by Gabrielson, however, that the detention of De Mello and the taking of his fingerprints and photograph were, under section 6462, R. L. 1935, authorized, even though it was done under compulsion. The question is presented by Gabrielson's exception to the refusal of the trial court to give the following instruction: "The Court further instructs the Jury that Section 6462, R. L. 1935, being Act. 129, S. L. 1931, authorizes and directs the chief of police 'to employ and put into force such systems of identification of prisoners and persons suspected of crime or of criminal intent and for the recording and compilation of crime statistics as the board of prison directors shall from time to time prescribe.' Under this law, in case you are not reasonably satisfied on the question as to whether or not the plaintiff willingly submitted to the taking of his photograph and fingerprints, nevertheless, if you find from the evidence that the circumstances were such as to justify a reasonable suspicion that the plaintiff had committed a crime or intended to commit a crime, you are instructed that the defendant, Gabrielson, was legally authorized and directed to take the plaintiff's photograph and fingerprints and that under such circumstances, he is not guilty of unlawfully arresting and detaining the plaintiff."

The statute relied upon does not purport to confer upon the chief of police or other designated officers the power to adopt or put in practice any system of identification of persons suspected of criminal intent that they might choose to adopt. Their power is limited to such system as the board of prison directors may prescribe. There is no evidence in the record that the board ever prescribed any system of

identification or ever indicated the circumstances under which such system might be put into use. But even if it were permissible to indulge the presumption that in fact the board acted in the matter it cannot be taken for granted in the absence of proof that it undertook to empower police officers to compel persons not under arrest upon a criminal charge but merely suspected of a criminal intent to submit unwillingly and under threat of imprisonment to have their fingerprints and photographs taken.

Gabrielson further contends that even in the absence of statutory authorization a law-enforcing officer may fingerprint and photograph persons suspected of harboring an intent to commit a crime. It was earlier held by several courts that the compulsory taking of fingerprints and photographs subsequent to arrest and indictment but prior to conviction was a violation of the rights guaranteed by the due process clause of the United States Constitution. This rule was announced and applied in *Gow* v. *Bingham,* 107 N. Y. S. 1011, and later adhered to in *Hawkins* v. *Kuhne,* 137 N. Y. S. 1090; *People* v. *Hevern,* 215 N. Y. S. 412; *Schulman* v. *Whitaker,* 115 La. 627; *Itzkovitch* v. *Whitaker,* 117 La. 707.

Other courts have taken a more liberal view of the circumstances under which fingerprints and photographs may be taken and have included the right to do so when the subject was merely under arrest upon a criminal charge. (See *State, ex rel.,* v. *Clausmeier,* 154 Ind. 599; *Bartletta* v. *Mc-Feeley,* 107 N. J. Eq. 141; *Downs* v. *Swann,* 111 Md. 53.) The latest case in which this view was taken is *United States* v. *Kelly,* 55 F. (2d) 67. In that case the defendant, whose fingerprints were taken and retained against his objection, was merely under arrest upon a charge of having violated a provision of the National Prohibition Act. The court, in sustaining the action of the arresting authorities, said: "Fingerprinting seems to be no more than an exten-

sion of methods of identification long used in dealing with persons *under arrest* for real or supposed violations of the criminal laws. It is known to be a very certain means devised by modern science to reach the desired end, and has become especially important in a time when increased population and vast aggregations of people in urban centers have rendered the notoriety of the individual in the community no longer a ready means of identification. * * * We find no ground in reason or authority for interfering with a method [fingerprinting] of identifying persons *charged with crime* which has now become widely known and frequently practiced both in jurisdictions where there are statutory provisions regulating it and where it has no sanction other than the common law." Beyond this no court has ever attempted to go nor could it do so without violating the due process clause of the Constitution. Human freedom is too precious a heritage and has been achieved at too great a cost of blood and suffering to be jeopardized by the acts of police authorities done without the sanction of law and in disregard of constitutional mandate.

After careful consideration of the exceptions submitted by the defendant's bill of exceptions we are of the opinion that they are without merit. They are therefore overruled.

*O. P. Soares* for plaintiff.

*W. C. Tsukiyama,* City and County Attorney, for defendant.