HOLKER, *Appellant*, v. HENNESSEY *et al.*; PIXLER, *Sheriff, Garnishee.*

Division One, November 23, 1897.

1. **Pleadings in Garnishment.** Issues in garnishment proceedings are made up by the denial of the answer of the garnishee and the reply thereto. The denial should state the grounds upon which a recovery is claimed, and the reply to the denial makes the issue.

2. **Proper Appellate Court:** AMOUNT IN DISPUTE. The amount in dispute on appeal of plaintiff is the difference between the amount claimed and the amount recovered.

3. **Findings of Trial Judge:** WHEN NOT DISTURBED. Where the evidence is conflicting, and no instructions are asked or given, the findings of the trial court sitting as a jury will not be disturbed.

4. **Practice:** CRIMINAL PROCESS IN CIVIL ACTION. In a civil action service of process upon a defendant, who is brought into the territorial jurisdiction of the court by fraudulent means or criminal process, will be set aside if timely objection is made thereto.

5. ————: SERVICE OF PROCESS BY UNLAWFUL MEANS. When an officer unlawfully gets in possession of the debtor's property, as by breaking into his dwelling house without proper authority, and then attaches it on *mesne* process, or levies upon it on execution, the attachment or levy will be void.

6. **Property Taken From a Prisoner.** In the absence of a statute, an officer has no right to take any property from the person of the prisoner except such as may afford evidence of the crime charged, or means of identifying the criminal, or may be helpful in making an escape, and for these purposes he has the right to search the prisoner. But he holds all such property, whether goods or money, subject to the order of the court.

7. **Searching Prisoner.** There seems to be no statute in this State giving the arresting officer authority to search a prisoner, but no such statute is necessary. The power exists from the nature and objects of the public duty the officer is required to perform.

8. **Lien of the State.** Neither the arresting officer nor the State has any lien on property taken from a prisoner until after conviction. A mere accusation does not justify the confiscation of the accused's property.

9. **Property of a Prisoner:** SUBJECT TO ATTACHMENT. Property in the hands of an officer, if wrongfully taken from a prisoner, is to be regarded in the custody of the prisoner, and is not subject to levy under attachment or execution; and if rightfully taken from him, under authority of law, it is in the custody of the law and subject to the orders of the court in which the criminal proceedings were pending, and is not, at least until after conviction, subject to attachment at a suit of a creditor of the prisoner. This rule, however, does not apply to property which has been stolen.

10. ———: MAY BE USED TO SATISFY JUDGMENT: OR GARNISHED. Unless otherwise directed by the court, money or property in the hands of the sheriff, lawfully taken from a prisoner at the time of his arrest, and belonging to him, may be applied to the satisfaction of the judgment against the prisoner in the criminal case, if execution has been issued, the issuance of the execution being equivalent to an order of the court. But if not so applied before the return of the execution, it is to be returned to the prisoner, and is subject to garnishment in the hands of the officer.

11. **Creditor's Lien Under Section 4317, Revised Statutes 1889.** Under section 4317, Revised Statutes 1889, in reference to the restoration of property stolen, providing that "the party injured shall have a lien on the estate of the criminal from the time of his arrest, subject to any lien granted by law to the State," it is *held* that the lien of the injured party can only be enforced after conviction, though it will date from the arrest, while the lien of the State dates from conviction but takes precedence over that of the injured party. No accused person is a "criminal" till convicted.

*Appeal from Nodaway Circuit Court.*—HON. C. A. ANTHONY, Judge.

AFFIRMED.

*Frank Griffin* and *W. W. Ramsay* for appellant.

(1) From the date of the arrest of Hennessey and Green by sheriff B. F. Pixler, the appellant, Holker,

had a lien upon the estate of such criminals and upon the revolvers, watch, diamond and $246 which the sheriff took into his possession and received from such prisoners, subject only to such lien, if any, held by the State. R. S. 1889, sec. 4317. (2) The State has no lien upon the money and property which the garnishee (sheriff) received from the prisoners. The State's lien dates from conviction in such cases. R. S. 1889, sec. 4264; *McKnight v. Spain, use of Field*, 13 Mo. 534. (3) The $246 in money found in garnishee's possession was not assigned, pledged, or in any manner disposed of. The State has no lien upon this money. The State can not procure a lien upon it before conviction of Hennessey and Green. R. S. 1889, sec. 4395; *State ex rel. v. Ray County Ct.*, 52 Mo. 30; *State v. Foss*, 52 Mo. 416. (4) The last two items charged in garnishee's account, set up in answer to interrogatories, for the board of Hennessey and Green, in jail, while they were awaiting trial before giving bail, can not be deducted from the $246 in garnishee's hands. *Strauss v. Ayers*, 34 Mo. App. 255; *Hurley v. Taylor*, 78 Mo. 238; *Bank v. Overall*, 16 Mo. App. 515. (5) It can not be maintained that the money and property in the hands of garnishee was *in custodia legis*, and therefore free from the process of garnishment. *Johnson v. Mason*, 16 Mo. App. 274. (6) This money can not be applied in paying the expenses of the extradition from Nebraska. The State pays that expense. R. S. 1889, secs. 4323, 4324. (7) It may be here urged that under section 4317, Revised Statutes 1889, the injured party can not establish his lien against the estate of the criminal in this kind of proceeding; that he should bring some kind of a suit to establish his lien. *Rischert v. Kunz*, 9 Mo. App. 283; *Hodo v. Benecke*, 11 Mo. App. 393.

*E. A. Vinsonhaler* for respondent.

(1) As no instructions were asked or given in this case, there is nothing here to review. *Miller v. Breneke*, 83 Mo. 163. (2) This property is *in custodia legis*, and therefore not subject to garnishment. *Richardson v. Anderson*, 18 S. W. Rep. 195; *McKnight v. Spain*, 13 Mo. 534. (3) Section 4308, Revised Statutes 1889, providing for search of prisoners, directs that property so obtained "shall be taken into possession by the sheriff, and applied to the support of such person while in confinement." And this statute does not say persons convicted of crime, but persons "charged with an offense." And it is the approved practice, upon arrest, to always search the prisoner. No order is necessary, nor is it subject to garnishment. *Bank v. McLeod*, 65 Iowa, 665; Bish. Crim. Proc., sec. 212; *Mercantile Co. v. Bettles*, 58 Mo. App. 384. (4) To permit garnishment in cases like this will produce great confusion. The sheriff, jailer, and every constable, town marshal, and policeman, would become liable on the process of garnishment from every court in the county for property taken from prisoners. (5) As to lien, there is none unless there is a conviction.

MACFARLANE, J.—The suit is against Hennessey and Green to recover $5,000, of which amount plaintiff charges that defendant robbed him. In aid of the suit an attachment issued and was placed in the hands of the coroner, and defendant Pixler, sheriff of Nodaway county, was summoned as garnishee.

Garnishee made answer to the usual interrogatories as follows:

"That at the date of service of process of garnishment, he did not have, nor has he since received, any

property, effects, or credits belonging to any of defendants; unless the following statement of facts should be held to show property in his hands belonging to defendants: That on the . . . . . . . day of . . . . . . . 1894, two persons who gave their names as David C. Wilson and E. M. Hall were apprehendéd by the police officers of Nebraska City, Otoe county, Nebraska, upon a charge that they had committed grand larceny in Nodaway county, Missouri.  Garnishee was informed by the officers that upon such arrest said officers took from the person of David C. Wilson $180 and from the person of E. M. Hall $66.  That pending issuance by the Governor of the State of Nebraska of a warrant upon the requisition of the Governor of the State of Missouri, said Wilson and Hall sued out a writ of *habeas corpus* to secure their release; that garnishee, to secure the detention of said parties, employed counsel and guards, and the said parties having been denied their release by the court, garnishee paid the costs; that the following expenses were incurred:'' Here follows an itemized statement of the expenses of *habeas corpus* proceedings in Nebraska, amounting to $411.75.

Garnishee continues: ''That afterward these parties under warrant from Governor of the State of Nebraska, were returned to and confined in the jail of Nodaway county; D. C. Wilson, 54 days, at a cost of $27; E. M. Hall, 61 days, at a cost of $30.50; when they gave bond for their appearance on the first day of November term, 1894, to answer an indictment now on file in this court; that said parties failed to appear as required and their bonds were forfeited and *alias* warrants issued for their arrest; that they are now fugitives from justice; that the sum of money said to be taken from the persons of said Wilson and Hall, by the police officers aforesaid, were turned over to this garnishee, and he is entitled to the same to reimburse

him and the State for the expense so incurred; that said Wilson and Hall are not entitled thereto. Garnishee further states that he is not indebted in any manner to said Wilson and Hall. Having fully answered, garnishee asks to be discharged with costs."

To this answer plaintiff replied: "That these defendants were, on or about the 13th day of June, 1894, justly indebted to him in the sum of fifty-two hundred and thirty-three and one third dollars; for and on account of having, at the county of Nodaway, and State of Missouri, on the 13th day of June, 1894, feloniously stolen said sum of money from him and having received the same from him by means of false pretenses: That on account of said felony the said Ed. Hennessey, *alias* E. M. Hall, and the said John Green, *alias* David C. Wilson, were at the June term, 1894, of the Nodaway county circuit court indicted. That afterward, to wit, on the ....... day ....... 1894, the garnishee, Benjamin F. Pixler, arrested said Green, *alias* Wilson, and said Hennessey, *alias* Hall, and placed them under arrest for the commission of said felony, and after said arrest he received from said parties the sum of two hundred and forty-six dollars in money; one diamond pin of the value of one hundred dollars; one gold watch of the value of one hundred and fifty dollars; one revolver of the value of ten dollars; one valise of the value of five dollars; a roll of money of the value of forty-two hundred dollars, of the goods, chattels, and property of the said Ed. Hennessey, *alias* E. M. Hall, John Green, *alias* D. C. Wilson, Mary Green, Mathew Reynolds, and William Gardner, *alias* John L. Gardner, *alias* Denver. That all of said property was in the possession of the garnishee at the time of the service of this summons on the said Benjamin F. Pixler. Plaintiff further states that though the said Hennessey, *alias* Hall, and the said Green, *alias*

Wilson, were indicted for said offense aforesaid, and were arrested as aforesaid, they were afterward, during the month of September, 1894, released from the Nodaway county jail, by the garnishee herein, Benjamin F. Pixler, and they have since escaped from this State, and have not been brought to trial or convicted of said offense. Plaintiff further says that from the date of the arrest of said parties as aforesaid this plaintiff had a just and lawful lien on the property aforesaid, so received by this garnishee for the reparation and payment of his debt against these defendants. That all of said property was and is subject to the garnishment proceedings in this case, and is in nowise liable to the payment of the claims set forth in the answer of garnishee. Wherefore plaintiff asks judgment against the garnishee for the full value of said property aforesaid."

There seems to be no denial of this reply, although the case was tried without objection on the part of plaintiff. No objection is now made to this omission and we treat the case, as treated by the parties, as though a general denial had been filed.

The issues were tried to the court without a jury. On the trial it was shown that plaintiff had recovered judgment against defendants for over $5,000; that garnishee was sheriff of Nodaway county; that under a charge of grand larceny from plaintiff, defendants were arrested in Nebraska by garnishee and the local officers of that State, and two revolvers, two valises, and a sum of money was taken from them; that defendants attempted but failed to secure their release under writs of *habeas corpus;* that garnishee paid the expenses incident to the arrest, defending the *habeas corpus* proceedings and securing the extradition of the prisoners which amounted to the sum named in the answer of garnishee; that the prisoners were brought to this State and in-

dicted, that they afterward gave bail and never appeared to answer to the indictment and their recognizance was forfeited by judgment of court and the accused were still fugitives from justice. There was evidence of one witness who testified that garnishee told him, while in Nebraska, that he had taken $4,000 from defendants. Garnishee admitted that the officers making the arrest took from the prisoners $246 in money, two revolvers, and two valises. He claimed that one of the revolvers was given to him by the prisoners. He admitted that he had the other and the $246 in money still in his possession, but claimed that it was subject to the State's lien for payment of costs. The evidence showed that plaintiff furnished garnishee money to pay the costs incurred in making the arrest and in all other proceedings in securing the return of the prisoners to this State. There was evidence tending to prove that Judge Dawson received a gold watch and a diamond pin as security for his fee of $300 for legal services in defending the prisoners; that $200 was afterward paid; the diamond pin valued at $150 was delivered to garnishee to be held as security for the balance; that after forfeiture garnishee paid Judge Dawson the balance of his fee and retained the pin. Judge Dawson testified that he received the watch and pin from a woman claiming to be the wife of defendant Green.

The finding and judgment of the court is as follows:

"The court finds that the defendant has in his possession a revolver worth $15. Ordered that the garnishee deliver the same into court, and upon said delivery is entitled to his discharge; and the court finds for garnishee as to other matters claimed, and now the sheriff, Pixler, delivers to the clerk of this court the revolver claimed, and is discharged."

From the judgment plaintiff appealed to the Kan-

sas City Court of Appeals, from which it was transferred to this court on account of the amount involved, being in excess of the jurisdiction of that court.

I.   Issues in garnishment proceedings are made up by the denial of the answer of the garnishee and the reply thereto.   The denial should state the grounds upon which a recovery is claimed and the reply to the denial makes the issue.   The reply of plaintiff in this case charged that the garnishee received from the defendants, when arrested, the sum of $246 in money; one diamond pin of the value of $100; one gold watch of the value of $150; one revolver of the value of $10; one valise of the value of $5; and a roll of money of the value of $4,200, the property of said defendants.   The evidence tended to prove these allegations.   The amount in dispute therefore exceeded $2,500.   The court found that the garnishee had in his possession one revolver, the property of the defendants, of the value of $15 which was ordered to be deposited in court.   The amount in dispute, on the appeal of plaintiff, is the difference between the amount claimed and the amount recovered.   In this case the Supreme Court clearly has jurisdiction of the appeal.   *Dowd v. Air Brake Co.*, 57 Mo. App. 219; s. c., 132 Mo. 579.

II.   As to whether or not the diamond pin and watch in question were the property of defendants, the evidence is conflicting.   No instructions as to them were asked or given, so we are unable to determine the theory upon which that issue was tried and determined. Indulging the presumption that the court found and decided correctly, we assume that it found that these articles belonged to the woman from whom Judge Dawson received them.   The evidence is also conflicting as to the amount of money the garnishee took from defendants.   No instructions were asked or given on this question, either.   No question of law therefore was

raised on that fact and there is nothing before us to decide.

Garnishee admitted, however, on the trial, that he took from the persons of defendants, when he arrested them, $246, which he still had. This fact then must be taken as confessed. The exception taken in the trial court, and insisted on here, is that error was committed in holding that "the $246 in the possession of the garnishee was not subject to garnishment."

III. · The only question raised by this record is whether or not this money taken from the person of these prisoners when arrested, and still held by garnishee officially as sheriff, is subject to garnishment, in an attachment suit in favor of plaintiff and against defendants, the subject of·the suit being damages on account of the alleged crime.

· It has been held in this State, and is generally recognized as the law, that in a civil action, service of process upon a defendant who is brought into the territorial jurisdiction of the court by fraudulent means or criminal process, will be set aside if timely objection is made thereto. *Byler v. Jones*, 79 Mo. 261; *Christian v. Williams*, 111 Mo. 435, and cases cited. So it is held that· "where an officer unlawfully gets possession of a debtor's property, as by breaking into his dwelling house without proper authority, and then attaches it on *mesne* process, or levies upon it on execution, the attachment or levy will be void." *Closson v. Morrison*, 47 N. H. 485; citing, *Ilsley v. Nichols*, 12 Pick. 270; *People v. Hubbard*, 24 Wend. 369; *Curtis v. Hubbard*, 4 Hill, 437 and other cases. This seems to be the modern doctrine founded upon the principle that courts will not lend their assistance to effectuate fraudulent or unlawful practices of suitors, though the old doctrine was that the seizure under process in such case would be valid, while the officer making it would

be liable for the trespass.   See *People v. Hubbard*, 24 Wend., *supra*.

In the case of *Closson v. Morrison, supra*, the sheriff arrested a person upon a charge of grand larceny and before trial or examination, proceeded, on his own motion, to search the prisoner, and took from his person some money, a watch, a watch chain, and a wallet.   On the next day writs of attachment were issued against the prisoner and placed in the hands of the sheriff and he thereupon attached the money and other property.   The court, in giving its judgment, says:   "The money and other articles were proper articles to attach, if the officer could rightfully obtain possession of them, without arresting the debtor, which his writ did not warrant him in doing.   Now, if the officer took advantage of his warrant and the arrest under it, to take from his prisoner this property, not for any legitimate purpose, but simply for the purpose of attaching it on these writs, that would be obtaining possession of the property under false pretenses and fraudulently, which would make the possession to stand like the unlawful possession in case of breaking into the house in the other case, and would not justify the attachment."   The court held that if this property was lawfully taken from the person of the debtor, it was subject to attachment while in the hands of the sheriff.

The same ruling was made by the Supreme Court of *Iowa* in the case of *Reifsnyder v. Lee*, 44 Iowa, 102.   BECK, J., in delivering the opinion, says:   "A party to a suit can gain nothing by fraud or violence under the pretense of process, nor will the fraudulent or unlawful use of process be sanctioned by the courts. In such cases, parties will be restored to the rights and position they possessed and occupied before they were deprived thereof by the fraud, violence, or abuse of

legal process." Money and a watch had also been taken from the person of the prisoner in that case, and the court held that the officer was authorized to make the search and take into his possession such property, and the levy of the attachment upon it while so held was valid. In a subsequent case, however, the same court held that where the sheriff took from the person of a prisoner two watches and some money, which were in no way connected with the crime with which he was charged, and which could not be used as evidence in the prosecution, it was his duty to return them, and while he retained them his possession was that of the prisoner, and they were "no more liable to attachment in an action against the prisoner than if they had been in his pocket." The court says: "To hold otherwise would lead to unlawful and forcible searches of person under cover of criminal process as an aid to civil actions for the collection of debts." *Bank v. Mc-Leod*, 65 Iowa, 666.

We find the same ruling by the Supreme Judicial Court of *Massachusetts*, in the cases of *Robinson v. Howard*, 7 Cush. 257, and *Morris v. Penniman*, 14 Gray, 220. In the former case the head note reads: "An officer is not liable, by the trustee process, to a creditor of a person arrested by him on a criminal warrant, for money or other property taken by the officer under color of official duty from the person of his prisoner, and for which he gives the latter a receipt." SHAW, C. J., says: "Such process might be used to search the person, or otherwise, under color of lawful authority, to get possession of the property of a debtor, in order to place it in the hands of the officer, and thus make it attachable under trustee process." In the latter case one Bassett was arrested on a charge of larceny. On being asked what property he had about him, he delivered up, without objection, a watch and key. While

they were in possession of the officer they were attached on process against Bassett. On this state of facts the court held that "the attachment of the watch and key was not valid."

A sheriff in *Texas* took from the person of a prisoner $950 in money; and other property. While in his possession the officer was served with process by garnishment. Knox, the prisoner, intervened and claimed that the property in the hands of the sheriff was in the custody of the law and was not subject to garnishment at the suit of a creditor. On appeal this plea was sustained on the ground that the property was not subject to process by garnishment. *Richardson v. Anderson,* 18 S. W. Rep. (Tex.) 195.

The Supreme Court of *Alabama* reaches a different conclusion under a provision of the code of that State. The court, however, in discussing the question, says: "At common law, and perhaps without statute, the money or property" taken from the person of the prisoner "would be *in gremio legis,* not subject to attachment, and entirely under the control of the court." *Ex parte Hurn,* 92 Ala. 109.

Generally speaking, in the absence of a statute, an officer has no right to take any property from the person of the prisoner except such as may afford evidence of the crime charged, or means of identifying the criminal, or may be helpful in making an escape. The officer has the undoubted right to make the search, and considering the nature of the accusation he may, when acting in good faith, take into his possession any articles he may suppose will aid in securing the conviction of the prisoner or will prevent escape. "He holds all, whether money or goods, subject to the order of the court, which, in proper circumstances, will direct him to restore the whole or a part to the prisoner." Bish.

Crim. Proc., secs. 211, 212; Wharton, Crim. Pl. and Pr., secs. 60, 61.

We find no statute of this State giving the arresting officer authority to search a prisoner, but no statute is necessary. The power exists from the nature and objects of the public duty the officer is required to perform. Such authority is directly given to a committing magistrate by statute (section 4308), but unless the arresting officer has the authority immediately, on making the arrest, all evidence of crime and of identification of the criminal might be destroyed before the prisoner could be taken before the magistrate.

We have no doubt the search of the prisoners in this case was entirely justifiable, considering the nature of the crime charged and other circumstances. In the circumstances, also, he was justified in taking from their persons and keeping in his possession the money found upon them, though it may have been in no manner connected with the charge or proof against them. Money is the most effective kind of property a prisoner could have in his possession to be used as a means of escape, and the safe keeping of the prisoner justified the retention of the money at least until he was brought before the magistrate. Neither the officer or the State acquires any title to the property, or lien upon it, until after conviction. A mere accusation does not justify the confiscation of the property of the accused.

The property, therefore, whatever its character, belongs to the prisoner until judicially sequestered. "The officer," says Bishop, "holds all, whether money or goods, subject to the order of court, which, in proper circumstances, will direct him to restore the whole or a part to the prisoner. This power is exercised both where the original taking was wrongful, and where for any other reason there ought to be a partial or

complete returning of the thing." Bish. Crim. Proc.,
sec. 212.

If the taking was wrongful, then the custody of
the officer can only be regarded as the custody of the
prisoner, and the property in his hands would, before
conviction, no more be subject to levy under attach-
ment or execution than if upon the person of the owner.
To hold otherwise, as said by SHAW, C. J., *supra*, "such
process might be used to search his person, or other-
wise, under color of lawful authority, get possession
of the property of the debtor, in order to place it in
the hands of the officer and thus make it attachable."
No such abuse of criminal process should be allowed.
"The people shall be secure in their persons, papers,
homes, and effects from unreasonable searches and
seizures." Const. of Mo., sec. 11, art. 2.

If the property was lawfully taken from the person
of the prisoner, the act of the officer will be in the per-
formance of an official duty. The sheriff being an
officer of the court in which the indictment is pending,
the money is in custody of the court subject to its
order. The rule of general application is that money
or property which has come into the hands of an officer
of a court by virtue of legal process is regarded as in
the custody of the law and can not be taken from him
under other process, either of execution, attachment, or
garnishment. Shinn on Attachment, sec. 505; 2 Wade
on Attachment, secs. 330, 421; Kneel on Attachment,
sec. 410; Waples on Attachment, sec. 390; 8 Am. and
Eng. Ency. of Law, 1137. This rule was approved at
an early day by this court in *Marvin v. Hawley*, 9 Mo.
382, in which the court says: "It is not the policy of
the law thus to embarrass the regular proceedings of
the courts, deprive parties of their rights and impose
such onerous and difficult duties on the sheriff. We
are then of the opinion that money in the hands of the

sheriff, collected on execution, can not be attached by the creditor of the execution plaintiff before the return day of the writ.''

The officer in such case is the mere agent of the court and custodian of the property, and to permit an interference with his possession would be to interfere with the jurisdiction of the court, and divert the property from the purposes for which it is held. No one could reasonably claim that money or other property taken from the person of a prisoner, and held to be used as evidence of the criminal charge, could be taken out of his possession by other legal process, whether of the same court or another, at least until final judgment of conviction. ''For these reasons, and because it is deemed contrary to public policy to permit such officers to be subjected to the embarrassment, delay and expense incident to such process, the authorities are almost uniform in holding that general words in garnishment statutes are not to be construed as including them.'' 8 Am. and Eng. Ency. of Law, 1138, and note 2.

The statute of Missouri provides that ''no sheriff, constable, or other officer charged with the collection of money shall, prior to the return day of an execution or other process upon which the same may be made, be liable to be summoned as garnishee.'' R. S. 1889, sec. 5220. It may be agreed that this statute does not in terms apply to a case like this one, in which the property is taken from the owner under criminal process. But we do not think the statute, by stating one case of exemption, excludes all others. The sheriff does not require an order of court to pay over money collected on execution; the law imposes that duty upon him. The statute was designed to protect the sheriff from embarrassments in executing the process of the court and the onerous and difficult duties garnishment proceedings would impose upon him. The principle

that money in the hands of a custodian of the court is subject to its order, rests upon wholly different grounds, as has been seen, and applies as well to receivers, clerks, and other custodians. Shinn on Attachment, sec. 505; 8 Am. and Eng. Ency. of Law, 1138.

It is therefore our opinion that if the money and property were taken from the person of the prisoners by authority of law, which the sheriff would be estopped to deny, it was in the custody of the law and subject to the orders of the court in which the criminal proceedings were pending, and was not, at least until after conviction, subject to attachment at a suit of a creditor of the prisoner. If, on the other hand, it was taken without authority of law, then it is not subject to attachment because a wrongful use was made of criminal process in getting possession. Such an abuse of criminal process is against the policy of the law, and would be violative of one of the rights guaranteed by the Constitution.

The only case in this State we have been able to find having any bearing on the issues in this one is *McKnight v. Spain*, 13 Mo. 536. In that case money and a watch were taken from a prisoner on his arrest, which were held by the officer of the court until after trial and conviction of the prisoner, and a judgment for costs had been rendered against him. An execution was issued on the judgment and the property so held by the officer was sold and the proceeds were applied to the payment of costs. The only questions determined in that case was whether the execution was sufficient in form and whether or not the lien of the State, which under the statute then in force dated from the arrest, would have priority over a transfer of the property after arrest and before judgment. The court held the execution good and that the lien of the State prevailed over the assignment. It does appear, however, that

the property was sold under execution, though held by an officer of the court, and the validity of the sale was tacitly approved.

This circumstance gives some support to the position of plaintiff that the property, while in the hands of the officer, was subject to seizure and sale under civil process. The statute makes it the duty of the clerks of criminal courts at the end of each term to issue executions for all fines imposed and all costs of conviction in criminal cases remaining unpaid "which shall be executed in the same manner as executions in civil cases." Sec. 4265. We take the issuance of execution in such cases and the duty under it of the officer into whose hands it is placed, done and required by authority of law, as equivalent to an order of the court, and unless otherwise directed by the court, authorizes the money or property in the custody of the court to be applied to the satisfaction of the judgment.

When the purpose of the legal custody has been accomplished and the only duty the custodian has to perform is to deliver the property or pay the money to the owner, the legal custody ceases, the officer holds it for the owner, and it becomes subject to process at the suit of his creditors. 2 Shinn on Attachment, sec. 546. This rule is recognized by our statute, which exempts a sheriff from garnishment until the return day of an execution, and an administrator until an order of distribution be made.

After a final conviction in a criminal case the purpose of the legal custody of the money or property taken from the person of the prisoner has presumably been accomplished, and it becomes subject to process unless the court may otherwise direct.

What has been said has no application to property stolen or otherwise feloniously obtained. The statute

provides for the restoration of such property to the owner. R. S. 1889, secs. 4308 *et seq.*

IV.  Plaintiff places his chief reliance for reversal upon the last clause of section 4317, which provides that "the party injured shall have a lien on the estate of the criminal from the time of his arrest subject to any lien granted by law to the State."

We are unable to see that this provision authorizes the enforcement of the lien by garnishment.  Indeed, the lien of the injured party is expressly made subject to the lien of the State, and the equities between the two lienors, in case they are conflicting, must be determined and settled by the court having custody of the property, under such appropriate proceedings as will give each a chance to be heard.  The statute gives the State a lien on all property, real and personal, of any person charged with a criminal offense, from the time of his final conviction of such offense, for the payment of all fines and costs which he may be adjudged to pay.  R. S. 1889, sec. 4264.  The statute further provides: "Whenever any person shall be convicted of any crime or misdemeanor, he shall be adjudged to pay the costs, and no costs incurred on his part, except fees for board, shall be paid by the State or county."  R. S. 1889, sec. 4395.

The lien the statute gives to the injured party only becomes consummate and enforcible on final conviction, but then relates back to the date of arrest.  The preceding part of section 4317, which provides the proceedings by which the person injured may secure restitution, or reparation in damages, shows clearly that the lien can only be enforced after final conviction. The lien is given on the estate of the *criminal* and no one can justly be called a criminal until he be convicted of crime.  While, therefore, the lien of the State dates only from conviction, and the lien of the injured person

dates from the arrest, both become enforcible on the date of the conviction, and the lien of the State has precedence though of a later date.

In this case neither party had an enforcible lien on the property in question by virtue of the foregoing provisions of the statute, for there had been no conviction, and the statute gave no aid to the proceedings by attachment.

We are of the opinion that the circuit court ruled correctly in holding that the sheriff was not subject to garnishment on account of the money of the prisoner in his custody, and its judgment is affirmed.    All the judges of this division concur.