### FURLONG v. UNITED STATES. *

(Circuit Court of Appeals, Eighth Circuit. January 6, 1926.)

No. 6872.

**1. Indictment and information ⊕⇒114—Indictment for second offenses against National Prohibition Act held sufficient.**

Indictment charging violations of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) as second offenses, which set out information in first prosecution, defendant's plea of guilty thereto, the amount of fine imposed, and that no proceedings by writ of error had been taken by defendant, and that time therefor had expired, *held* sufficient to charge second offenses without allegation that no proceedings were had in trial court to set aside former conviction.

*Rehearing denied April 21, 1926.

**2. Intoxicating liquors ⊕⇒213, 215—Indictment for sales and maintenance of nuisance held sufficient.**

Indictment for unlawful sales and maintenance of nuisance in violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), specifying city in which sale was made, purchaser, and quantity and kind of liquor sold, *held* sufficient.

**3. Arrest ⊕⇒71—Criminal law ⊕⇒393(2)—Searches and seizures ⊕⇒7—Recovery of marked bill paid for liquor and its use in evidence held not violative of defendant's constitutional rights.**

Where prohibition officer, after other officers had purchased liquor of defendant and after defendant's arrest, demanded return of a marked bill given in payment for the liquor sold, *held,* arrest and recovery of bill were all part of single transaction, and use of bill as evidence against defendant was not violative of defendant's rights under Const. Amends. 4, 5.

**4. Criminal law ⊕⇒662(2), 1186(4)—Witnesses ⊕⇒370(1)—Refusal to permit cross-examination of government witnesses as to unfriendly feelings toward defendant held erroneous, but not ground for reversal.**

In prosecution for violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), refusal to permit cross-examination of government witnesses relative to unfriendly feelings toward defendant *held* erroneous, but not ground for reversal, in view of Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), nor violative of defendant's rights under Const. Amend. 6.

**5. Criminal law ⊕⇒1170(2)—Erroneous exclusion of evidence not prejudicial, where facts are fully shown by other witnesses.**

Erroneous exclusion of evidence is not prejudicial, where fact sought to be elicited is afterwards fully shown by other witnesses.

**6. Criminal law ⊕⇒472, 488, 1186(4)—Rejecting expert testimony discrediting plaintiff's expert and requiring defendant's expert to test liquor and give evidence as to its character held erroneous, but not ground for reversal.**

Where defendant charged with violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) produced expert and by him sought to discredit method pursued by government chemist in determining alcoholic content of liquor, it was error for court to sustain objections to a portion of this discrediting evidence and to require defendant to have his expert test the liquor and give evidence as to its character, though not ground for reversal in view of Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246).

Booth, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

William J. Furlong was convicted of violating the National Prohibition Act, and he brings error. Affirmed.

E. D. O'Sullivan, of Omaha, Neb. (W. N. Jamieson and C. J. Southard, both of Omaha, Neb., on the brief), for plaintiff in error.

George A. Keyser, Asst. U. S. Atty., of Omaha, Neb. (James C. Kinsler, U. S. Atty., of Omaha, Neb., Ambrose C. Epperson, Asst. U. S. Atty., of Clay Center, Neb., and Andrew C. Scott, Asst. U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Before KENYON and BOOTH, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. Defendant was indicted for violating the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), the first three counts charging unlawful sales, and the fourth the maintenance of a nuisance. These violations are charged as second offenses. The indictment sets out fully the information in the first prosecution charging in seven counts the unlawful sale of liquor, and in the ninth count the maintenance of a nuisance. The indictment also alleges the proceedings of the court under this information. It states that the defendant pleaded guilty to all of the counts, and sets forth the judgment of the court upon that plea sentencing him to pay a fine of $300. It further alleges that no proceedings on writ of error had been taken by the defendant and that the time for obtaining such writ had expired. It charges in appropriate language the offenses here involved to be second offenses.

[1] Defendant attacked the sufficiency of this indictment, both by demurrer and motion. He insists first that the charge of a second offense is insufficiently pleaded because the indictment does not allege that no proceedings had been had in the trial court to set the conviction aside. In our judgment there is no merit in this assignment. The only object to be served by this part of the indictment was to give the defendant clear notice that the offenses of which he was charged in the present prosecution were second offenses, and to set forth with reasonable clearness the former charge and his conviction thereon. The indictment fully answers these purposes.

[2] It is next urged that the indictment fails to state facts sufficient to constitute a public offense. The indictment clearly specifies the city in which the sale was made, the person to whom it was made, and the quantity and kind of liquor sold. One needs only to compare these specific facts with the averments of the indictment in Carpenter v. United States (C. C. A.) 1 F.(2d) 314, upon which defendant relies, to see that the present indictment is not subject to the criticism leveled against the pleading in that case. The indictment here goes much farther in specification than the indictment sustained by this court in Hensberg v. United States, 288 F. 370. See, also, Ritter v. United States (C. C. A.) 293 F. 187.

[3] The error most dwelt on here and in the trial court grows out of an alleged violation of the Fourth and Fifth Amendments of the federal Constitution. The facts on that subject are these:

On May 9th and 12th two prohibition agents visited a soft drink place kept by defendant, and purchased liquor. On the 15th of that month a plan was laid by the officers to get evidence of the character of the place and of defendant's violation of the law. The same two agents were given a marked one-dollar bill and directed to enter the place and purchase intoxicating liquors. Three other officers waited near by. As soon as the liquor was purchased and paid for with the bill, the two agents making the purchase took the glasses containing the liquor and walked out of the building and signaled to the other waiting officers. They immediately rushed into the building. The liquor was placed in a bottle and marked. The head officer, named Samardick, demanded the dollar bill of defendant. This officer and the other agents testified that Furlong directed the bartender, Pooler, to open the cash register and get the bill, and that he did so and delivered it to Samardick. Defendant and Pooler testified that Samardick insisted upon Furlong's opening the cash register, and that in obedience to the demand of the officer Furlong opened it and produced the bill and turned it over to Samardick. Either version is sufficient to raise the question whether the bill was obtained by an unreasonable search and seizure in violation of the Fourth Amendment, and whether its use in evidence by the government was a violation of the Fifth Amendment. Before the trial defendant by a proper motion applied to the court for an order directing a return of the bill. The same question was raised throughout the trial by proper motions and objections.

Do these facts support the constitutional objections? Clearly not. The purchase of liquor, the recovery of the marked bill, and the arrest of the defendant were all part of a single transaction. It was not only the

right but the duty of the officer to seize the bill as a part of the arrest. It was a factor in the crime, and important proof of its commission. The rule on the subject is stated as follows in 1 Bishop's Criminal Procedure, § 211:

"The arresting officer ought to consider the nature of the accusation; then if he finds on the prisoner's person, or otherwise in his possession, either goods or money which he reasonably believes to be connected with the supposed crime, as its fruits, or as the instruments with which it was committed, or as supplying proofs relating to the transaction, he may take and hold them to be disposed of as the court directs."

This statement is approved by the Supreme Court in Carroll v. United States, 267 U. S. 132, 158, 45 S. Ct. 280, 69 L. Ed. 543, 39 A.. L. R. 790; Weeks v. United States, 232 U. S. 383, 392, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177. See, also, Agnello v. U. S., 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. —— (filed October 12, 1925).

The same doctrine is laid down in Holker v. Hennessey, 141 Mo. 527, 42 S. W. 1090, 39 L. R. A. 165, 64 Am. St. Rep. 524; Ex parte Hurn, 92 Ala. 102, 9 So. 515, 13 L. R. A. 120, 25 Am. St. Rep. 23; Getchell v. Page, 103 Me. 387, 69 A. 624, 18 L. R. A. (N. S.) 253, 125 Am. St. Rep. 307.

It is the duty of the officer making an arrest to take money or other articles connected with the crime, or evidencing its commission, from the person of the defendant, or from his possession or control, and hold the same subject to the order of the court. In this case the officer had the same right to take the marked bill from defendant's cash register. as from his pocket. The extent of the search and seizure at the time of arrest must depend to some extent upon the nature of the crime.

See, in addition to the above authorities, Ash v. Commonwealth, 193 Ky. 452, 236 S. W. 1032; Ragland v. Commonwealth, 204 Ky. 598, 265 S. W. 15; Sayers v. United States (C. C. A.) 2 F.(2d) 146; Brady v. United States (C. C. A.) 300 F. 540.

Considering our increasing failure in dealing with crime, there is the highest wisdom in the following statement of the Supreme Court in Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790:

"The Fourth Amendment denounces only such searches or seizures as are unreasonable, and it is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interest as well as the interests and rights of individual citizens." .

[4, 5] Two of the government agents, Samardick and Schmidt, were asked on cross-examination whether they had not had trouble with the defendant, and whether they did not entertain unfriendly feelings toward him. This line of examination was objected to by the government, and the objection sustained. This was clearly error. No rule is better established than the right to show the bias and prejudice of a witness towards a party to the suit as a part of his cross-examination. His answers are not relevant to the issue, but they do throw a direct light on the credibility of his evidence. It is elementary doctrine that hatred, interest, and ill will are among the most potent forces in coloring testimony. Wigmore on Evidence, §§ 945, 948, 950. This error involves no question under the Sixth Amendment of the Constitution. Defendant was confronted by the witnesses of the government and granted the right to cross-examine them, and availed himself of that right as to all the material issues in the case. Defendant and his witness showed the bias, prejudice, and ill will of the two government witnesses fully, giving all the details of the previous trouble between defendant and those witnesses. This testimony was in no way contradicted. The government's witnesses were present in court but were not recalled to answer or qualify the charges made against them. Their prejudice and ill will towards the defendant therefore stood as an established fact in the case. It is elementary law that if evidence is at first improperly excluded, but afterwards the fact sought to be elicited is fully shown by other witnesses, the error of the first ruling ceases to be prejudicial. ·

[6] The government produced an expert chemist by the name of Little who gave the result of his examination of the liquor which, was purchased at the time of the arrest. Defendant produced an expert and sought to show by him that the method pursued by the government expert was wholly untrustworthy. Objections were sustained to a portion of this evidence, and defendant was required by the court to have his expert test the liquor for the purpose of determining its character and give his evidence on that subject. This was error. Defendant had a right not only to contradict the evidence of the government's expert, but also to show

that the test and method pursued by him were not worthy of credit. However, in answer to questions asked defendant's expert as to whether the liquid tests were accurate he gave a number of answers. For instance, he testifies when asked as to whether the tests made by Mr. Little could have been made with one ounce of liquid: "I don't believe they could be accurately made with one ounce of liquid." He also testified that "you could not determine from taste, smell, or sight whether or not a given liquid was fit for beverage purposes and that you cannot thus tell whether a given liquid has more than one-half of one per cent. of alcohol by volume." He further testified that in the one ounce of liquor that seems to have been before him in the courtroom there was enough to tell by analysis whether it was true whisky, and that one could tell whether it contained more than one-half of one per cent. of alcohol. A fuller examination should have been permitted, but the essential facts sought to be shown by this expert are in the record testified to by him.

Therefore as to these two matters it seems to us the errors were technical and that they do not affect the substantial rights of defendant. Section 269 of the Judicial Code as amended by the Act of February 26, 1919 (40 Stat. at Large, 1181 [Comp. St. Ann. Supp. 1919, § 1246]), fits exactly into this situation and this case is one calling for its application.

A brief history of that statute is important in determining its scope and meaning. President Roosevelt in his annual message in December, 1906, devoted considerable space to the discussion of the evil which the statute was intended to remedy, and recommended to Congress the passage of an act in the following terms:

"No judgment shall be set aside or new trial granted in any case, civil or criminal, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire record, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

This substantially embodies the language of the rule adopted by the High Court of Justice in England in 1873, pursuant to the provision of the Judicature Act of that year which conferred upon the High Court of Justice power to make rules to cover all such subjects as are embraced in our codes of procedure. The English rule has caused new trials to be almost unknown in the practice of that country. The Seventh Amendment of our Constitution would not permit the courts of the United States to adopt some of the practices of the English courts. The fundamental principle, however, that new trials shall only be granted for errors which cause a miscarriage of justice, may be as fully applied by our courts as by the courts of England. Acting upon the President's recommendation, a measure was introduced in Congress in the words which he had recommended. The American Bar Association at its meeting in 1907 approved the measure, and a committee was appointed to urge its passage by Congress. Members of that committee appeared repeatedly before the Judiciary Committees of the Senate and House in its support. The statute was continuously before Congress until 1919, when the act in a modified form was passed.

The object of the legislation is to abolish the old rule that when error is shown prejudice will be presumed. It creates a presumption in favor of the judgment, and requires the party seeking a new trial to convince the court upon the entire record that the judgment is wrong. If the judgment is right, the end of the law has been attained, and it ought not to be disturbed. Some errors are so fundamental as to justify in and of themselves an inference that they have perverted the trial. Such, however, is seldom the character of rulings on questions of evidence, instructions to the jury, or other matters of procedure. Stegeman v. Pa. R. Co. (C. C. A.) 6 F.(2d) 873.

The statute is remedial and was intended to produce a fundamental change in practice. Its language leaves no room for doubt that it was the intention of the Legislature that a judgment should not be disturbed unless the court can say from an examination of the entire record that the error complained of has in fact affected the substantial rights of the complaining party.

The judgment is affirmed.

BOOTH, Circuit Judge, dissents.