Diers v. Mallon.

HERMAN DIERS v. JAMES P. MALLON ET AL.

FILED OCTOBER 15, 1895.    No. 5815.

1. Sheriffs and Constables: ARREST AND DETENTION WITHOUT WARRANT.    In the absence of any statutory power or authority a sheriff, constable, or other peace officer may arrest, without process, a person whom he has reasonable cause to believe guilty of a felony, and detain him a reasonable time until a warrant can be procured.    Such officer is justified in arresting without a warrant for a felony, even though he has no personal knowledge of the guilt of the accused, if the officer in good faith acted upon information received from others upon whom he had reason to, and did, rely, although it should subsequently turn out that the one so arrested was not guilty.

2. ———: ———: REASONABLE GROUNDS: BY WHOM DETERMINED.
   When the testimony is conflicting, the question whether the offi-
   cer had reasonable ground for believing that the person arrested
   had committed a felony is for the jury under proper instruc-
   tions.    But where the facts are conceded or undisputed, proba-
   ble cause is a question of law for the court to determine.

3. ———: ———: ———. Probable cause is a reasonable ground of
   suspicion, supported by facts and circumstances of such a na-
   ture as to justify a cautious and prudent person in believing that
   the accused was guilty.

4. **False Imprisonment:** REASONABLENESS OF DETENTION: BY
   WHOM DETERMINED. In an action for false imprisonment
   against an officer for arresting without a warrant, the reason-
   ableness of plaintiff's detention is a question for the court,
   where.there is no conflict in the evidence as to the length of
   time and the circumstances under which the plaintiff was held.
   Where the facts are in dispute, it is for the jury to determine as
   to the reasonableness of the detention, under proper instructions
   by the court.

5. ———: EVIDENCE OF PLAINTIFF'S GOOD CHARACTER. Evi-
   dence to establish the previous good character of the plaintiff in
   a suit for false imprisonment is inadmissible, where no attempt
   has been made to assail it.

6. **Instructions:** RECORD FOR REVIEW. The instructions given
   and refused not considered, because of the insufficiency of the
   assignments relating thereto both in the motion for a new trial
   and the petition in error.

7. **False Arrest and Imprisonment:** VERDICT FOR DEFEND-
   ANTS: EVIDENCE. Evidence considered, and *held* sufficient to
   justify a verdict for the defendants.

ERROR from the district court of Dodge county. Tried
below before MARSHALL, J.

The opinion contains a statement of the case.

*C. Hollenbeck* and *N. H. Bell,* for plaintiff in error:

The sheriff is liable for the use of excessive force or vio-
lence whether inflicted wantonly or otherwise. (*Krug v.
Ward,* 77 Ill., 603; *Blythe v. Tompkins,* 2 Abb. Pr. [N.

Y.], 468; *Parsons v. Harper*, 16 Gratt. [Va.], 64; *Foxhall v. Barnett*, 22 Eng. L. Eq., 179.)

Plaintiff's character is in issue, and if known to defendant, may be proved to show a want of probable cause. (*Israel v. Brooks*, 23 Ill., 575; *Hirsch v. Feeney*, 83 Ill., 548; *McIntire v. Levering*, 148 Mass., 546.)

*W. H. Munger* and *Frick & Dolezal, contra*, cited: *Rohan v. Sawin*, 5 Cush. [Mass.], 281; *Doering v. State*, 49 Ind., 56; *Rafferty v. People*, 69 Ill., 111; *Pepper v. Mayes*, 81 Ky., 674; 7 Am. & Eng. Ency. Law, 675; 2 Thompson, Trials, secs. 1559, 1560; *Firestone v. Rice*, 38 N. W. Rep. [Mich.], 885; *Cochran v. Toher*, 14 Minn., 385; *Fire Association v. Flemming*, 3 S. E. Rep. [Ga.], 420.

NORVAL, C. J.

This was an action for false arrest and imprisonment by Herman Diers against James P. Mallon, as principal, E. William and others, as sureties on the official bond of said Mallon, as sheriff of the county of Dodge. There was a verdict for the defendants, a new trial was denied, and judgment was entered upon the verdict. Plaintiff prosecutes error.

The facts in the case, as disclosed by the record before us, are, in substance, as follows: On the 10th day of December, 1889, one Carlos F. Pulsifer was murdered near the village of Crowell, in Dodge county. A day or two later the defendant sheriff arrested and held in his custody in the jail of said county, Charles Shepherd and Christian Furst upon the charge of having committed said murder. During said imprisonment, and on the 13th day of said month of December, the sheriff was present at a conversation had between said Shepherd and the attorney of the latter, T. M. Franse, Esq., in which the former stated to the latter, in substance and effect, that the plaintiff Diers

had hired him, Shepherd, to kill and murder said Pulsifer,
which statement said Shepherd reiterated in the presence
and hearing of the officer; that at the same time Mr.
Franse said he was not surprised, or words to that effect;
that he knew that some one was behind it, and further,.
Pulsifer had stated during his lifetime that if he was ever
murdered it would be by Diers; that Mr. Franse also
stated that Diers, the plaintiff, was a bad man, by which
the sheriff understood that plaintiff was a vicious man, and
one difficult to handle. On the 14th day of December Mr.
Mallon took the train for Norfolk, and while going he had
a conversation with Judge Crawford, of West Point, with
whom he was acquainted, regarding the murder, and of
whom he made inquiry in regard to the reported statement
above referred to claimed to have been made by Pulsifer in
his lifetime, and Judge Crawford informed the sheriff that
Mr. Romberg had stated in West Point that Pulsifer had
made the statement, "if he was killed, that Diers would be
the one that would murder him;" that the judge also in-
formed him that years before there were a number of in-
cendiary fires at West Point, and that Diers was strongly
suspicioned as being the perpetrator of the crimes; that it
was getting pretty hot for Diers, and an attorney was con-
sulted, who advised Diers to enlist in the army to prevent
his being prosecuted, and he thereupon did so. On the
information thus received from Shepherd, Franse, and
Crawford, the defendant Mallon, on returning home from
Norfolk, on Sunday, December 15, without any warrant,
arrested Diers on the train for being implicated in the
murder of Pulsifer; that plaintiff, upon being told that he
was charged with murder, inquired of the sheriff, "Is it
murder, or knowing of murder?" After the arrest of Diers
he was handcuffed and in that condition brought to Fre-
mont on the cars, and from the depot he was taken in a
carriage to the jail, where he was placed and confined in
one of the bedrooms in the living apartment of the jail

until December 19.    Within an hour after reaching Fremont, which was on Sunday, the sheriff went to Mr. Loomis, the county attorney, told him of the arrest, detailed the circumstances to him, and asked that a complaint at once be filed.    Mr. Loomis agreed to do so.    The next morning, and several times during Monday, the sheriff saw the county attorney about it, and on Tuesday, December 17, a complaint was duly filed with the county judge charging the plaintiff with murder, upon which a warrant was issued, and by agreement of the parties the hearing was postponed until the 19th day of December, on which day an examination was had upon the complaint, which resulted in Diers being discharged by the county judge.    It is further disclosed by the testimony adduced on the trial of this cause that the examination before the county judge was not had at an earlier date owing to the fact that the witnesses lived at so great a distance from Fremont that their attendance could not sooner be obtained; that the sheriff, at the time of the making of the arrest, believed to be true the information received from the different sources relating to Diers being implicated in the murder, and that Mr. Mallon in arresting and detaining Diers acted in the utmost good faith.

The ninth assignment of error, which is the first one discussed in the brief of counsel for plaintiff, is based upon the holding by the court as a matter of law that Mallon had probable cause for making the arrest and in withholding that question from the jury.    The point is raised by the fourth instruction given, which reads as follows:

"4. The jury are instructed the evidence in this case shows that the defendant Mallon, at the time he made the arrest complained of, had reasonable and probable cause to suspect that the plaintiff was guilty of procuring the alleged murder to be committed, although as a matter of fact the plaintiff was innocent of that charge.    The only questions then left for the jury to determine is: First—Did the defendant Mallon, in keeping the plaintiff in custody, use

more force and violence than was reasonably necessary to safely keep and retain him in custody? In other words, is the defendant Mallon guilty of an assault and battery upon the person of the plaintiff Diers? Second—What, if any, damages has the plaintiff suffered by reason of such assault and battery?"

That Pulsifer was murdered is not questioned. The plaintiff was arrested for being implicated in the crime, by the defendant Mallon, without any warrant therefor having been issued. The authority of a sheriff, constable, or peace officer, in the absence of any express statutory provision to arrest without process upon reasonable suspicion one who is charged with the commission of a felony, and detain him for a reasonable time until a warrant can be procured is most fully established by the adjudicated cases. (*Rohan v. Sawin*, 5 Cush. [Mass.], 281; *Wade v. Chaffee*, 8 R. I., 224; *Beckwith v. Philby*, 6 Barn. & Cress. [Eng.], 635; *Doering v. State*, 49 Ind., 56; *Davis v. Russell*, 5 Bing. [Eng.], 354; *Holley v. Mix*, 3 Wend. [N. Y.], 350; *Eanes v. State*, 6 Humph. [Tenn.], 53; *Burns v. Erben*, 40 N. Y., 463; *Firestone v. Rice*, 71 Mich., 377; *Filer v. Smith*, 96 Mich., 347; *Marsh v. Smith*, 49 Ill., 396; *Shanley v. Wells*, 71 Ill., 78; *Simmerman v. State*, 16 Neb., 615; 7 Am. & Eng. Ency. Law, 675, and cases cited; Cooley, Torts [2d ed.], 202.) Judge Cooley, in his valuable treatise on Torts, after discussing the liability of a private person for arresting one on suspicion of crime, observes: "A peace officer may properly be treated with more indulgence, because he is specially charged with a duty in the enforcement of the laws. If by him an arrest is made on reasonable grounds of belief he will be excused, even though it appear afterwards that in fact no felony had been committed." The reason of the rule is stated by Dewey, J., in *Rohan v. Sawin, supra*, in the following apt language: "It has been sometimes contended that an arrest of this character, without a warrant, was a violation of the great fundamental

principles of our national and state constitutions forbidding unreasonable searches and arrests, except by warrant founded upon a complaint made under oath. Those provisions, doubtless, had another and different purpose, being in restraint of general warrants to make searches, and requiring warrants to issue only upon complaint made under oath. They do not conflict with the authority of constables or other peace officers, or private persons under proper limitations, to arrest without warrant those who have committed felonies. The public safety and the due apprehension of criminals charged with heinous offenses imperiously require that such arrests be made without warrant by officers of the law. As to the right appertaining to private individuals to arrest without a warrant, it is a much more restricted authority, and is confined to cases of the actual guilt of the party arrested, and the arrest can only be justified by proving such guilt. But as to constables, and other peace officers, acting officially, the law clothes them with greater authority [than private persons], and they are held to be justified, if they act, in making the arrest, upon probable and reasonable grounds for believing the party guilty of a felony; and this is all that is necessary for them to show in order to sustain a justification of an arrest for the purpose of detaining the party, to await further proceedings under a complaint on oath and a warrant thereon."

Counsel for plaintiff insist that the question whether the sheriff had reasonable or probable ground for believing that plaintiff procured the murder to be committed should have been submitted to the jury, and, therefore, the court erred in not submitting to the jury the question to pass upon. If there was any conflict in the testimony upon the subject, then we would agree with counsel that it would have been reversible error for the court to withdraw the question of probable cause from the jury. Where the facts are in dispute, the question of reasonable ground for believing that the person arrested without process has com-

mitted, or is implicated in, a felony is for the jury under proper instructions. Such, undoubtedly, is the general rule. But when the facts are conceded or undisputed, as is the case here, the rule is that probable cause is a question of law for the court. A number of authorities may be cited in support of this doctrine: *Turner v. O'Brien*, 5 Neb., 542; *Ross v. Langworthy*, 13 Neb., 495; *Boyd v. Cross*, 35 Md., 194; *Burns v. Erben*, 40 N. Y., 463; *Hamilton v. Smith*, 39 Mich., 222; *Huntington v. Gault*, 81 Mich., 155; *Perry v. Sulier*, 92 Mich., 72, 52 N. W., 801; *White v. Queen*, 55 N. W. Rep. [Mich.], 843; *Filer v. Smith*, 55 N. W. Rep. [Mich.], 999.

Did Mallon have reasonable or probable cause for arresting the plaintiff? In determining this point it is important to keep in mind the meaning of "probable cause." We know of no clearer definition of that term than the one given by the court of appeals of Maryland in *Johns v. Marsh*, 9 The Reporter [Md.], 143, in the following language: "Probable cause, according to the definition adopted by this court, is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused was guilty. (*Boyd v. Cross*, 35 Md., 197; *Cooper v. Utterbach*, 37 Md., 282.) It is very true, probable cause does not depend on the actual state of the case in point of fact as it may turn out upon legal investigation. It is made to depend upon knowledge of facts and circumstances which were sufficient to induce the defendant or any reasonable person to believe the truth of the accusation made against the plaintiff, and that such knowledge and belief existed in the mind of the defendant at the time the charge was made or being prosecuted, and were in good faith the reason and inducement for his putting the law in motion." Applying the foregoing to the case under consideration, did the trial court wrongfully determine, as a matter of law, that the sheriff had probable ground for making the arrest? We are firmly

convinced that the question must be answered in the nega-
tive.    The uncontradicted facts and circumstances under
which the officer acted, as disclosed by this record, were of
such a character that any reasonable or prudent person, di-
vested of passion or prejudice, would have fairly suspected
and believed that plaintiff was implicated in the murder of
Pulsifer.    Prior to the arrest, as already stated, one of the
murderers, then in the custody of the sheriff, and in his
presence and hearing, asserted that plaintiff procured him
to commit the crime.    But this is not all.    The sheriff,
upon making inquiry of Mr. Franse and Judge Crawford,
both reliable and credible persons, and with whom he
was acquainted, had ascertained from them that Pulsifer
had made the statement concerning Diers already men-
tioned, which tended to strengthen his belief in the truth-
fulness of the information imparted by Shepherd.    In mak-
ing the arrest Mallon was not prompted to do so by mere
idle rumor, but acted in the utmost good faith upon infor-
mation received from others, upon which he had reason to
and did rely, and any cautious, prudent person, under the
circumstances, would have so acted.    We are constrained to
hold that the officer was not required to make further in-
quiry regarding the truth of the charge imputed to the
plaintiff, and that under this record the trial court was
fully justified in not submitting to the jury for their deter-
mination the question whether the sheriff had reasonable or
probable cause for believing that the plaintiff was guilty of
the crime of murder.

What we have said disposes of the assignment of error
based upon the refusal of the court below to permit plaint-
iff to prove that the relations existing between him and
Pulsifer were the most friendly and confidential, and were
so known in the community where they resided.    Had this
testimony been received it would not have shown want of
probable cause.    Mallon was not bound to show that Diers
was in fact guilty, nor was he required to make inquiries of

his neighbors concerning plaintiff's character and the relations he sustained towards deceased. All that the law demanded of him was that he act in good faith upon information of such a character as to raise in his mind a reasonable ground to suspect that the plaintiff was implicated in a felony. This, as we have seen, was fully established upon the trial.

It is argued that the court erred in holding that the plaintiff was detained an unreasonable length of time before he was taken before the county court for examination,—in other words, that the question of unreasonable detention should have been submitted to the consideration of the jury. Had the evidence been conflicting upon that branch of the case, then it would have been for the jury to pass upon. But there is not a particle of conflict in the testimony as to the length of time, or the circumstances under which the plaintiff was held; therefore the reasonableness of the detention was a question of law for the court. This is the rule laid down in 2 Thompson, Trials, sections 1559 to 1561, and is believed to be sound. See *Roth v. Buffalo & S. L. R. Co.*, 34 N. Y., 553, where the court, in considering the same question, say: "When the testimony is conflicting and the facts are unsettled, the jury are to decide, under the instructions of the court, as to the law. When there is no dispute as to the facts, the question is purely one of law, and the court should decide it." In view of the facts already detailed we do not think plaintiff was held an unreasonable length of time, and the court did not err in so deciding. It was Sunday that the arrest was made, and although, as contended by plaintiff, the Code confers upon magistrates in criminal proceedings the power to hold an examination upon the first day of the week, they are not required so to do. (*Pepper v. Mayes*, 81 Ky., 674.) Therefore Mallon was not derelict of duty in not filing a complaint causing a warrant to be issued, and taking the plaintiff before a magistrate on the day of the arrest. As

stated elsewhere, the sheriff, immediately after arriving with the prisoner in Fremont, and frequently during the following day, called the attention of the prosecuting officer of the county to the matter, detailing to him the facts within his possession, and requested that he prepare a complaint and have a warrant issued, which the prosecutor promised to do.   Upon this assurance Mallon had a right to rely, and was not required to procure another attorney to institute the prosecution.   On Tuesday the complaint was filed, but by consent of the counsel representing Mr. Diers the examination was deferred until Thursday.   It appears that the attendance of witnesses could not be sooner procured. Plaintiff was given as speedy a hearing as the circumstances would permit, and the court did not err in determining that the detention was not unreasonable.

The eleventh assignment of error is as follows: "The court erred in refusing to give to the jury instructions numbered 1, 2, 3, 4, and 5 as requested by plaintiff." These five requests to charge read thus:

"1. An officer should not receive every idle rumor, but should make such diligent inquiry touching the truth of the charge as the circumstances will permit, before he assumes to arrest upon the information of another.

"2. Mallon had no right to put irons upon plaintiff unless it was necessary for his safe keeping, and if it was not necessary for his safe keeping, then defendants are liable.

"3. The detention of plaintiff by defendant, without a warrant, under arrest until Tuesday following his arrest, was detaining him an unreasonable time, and renders the defendants liable.

"4. It was the duty of the defendant Mallon, when he arrested plaintiff, to procure a warrant as soon as he reasonably could, and if he did not so procure a warrant, he is guilty of false imprisonment for such length of time as plaintiff was so held without his consent.

"5. If you find from the evidence that plaintiff was sub-

jected to treatment unnecessarily severe after his arrest, the defendants are liable for such damages as plaintiff has suffered by reason of such unnecessary severity."

While it is urged the law of the case is correctly set forth in these requests, it is conceded that if the trial court was right in withholding from the jury the question of probable cause and that of the reasonableness or unreasonableness of the detention of plaintiff after his arrest, that the first, third, and fourth of these requests were rightly refused. We quite agree with the counsel in this, and as we have reached the conclusion that both the question of the probable cause for making the arrest and the reasonableness of the detention of the plaintiff were questions of law for the court, and that it properly determined them, it follows that no error was committed in not giving the said first, third, and fourth instructions. The refusing of plaintiff's requests copied above having been assigned as error en masse, both in the petition in error and motion for a new trial, and a portion of them having been rightly refused, under a rule established by an unbroken line of decisions the remaining requests to charge will not be considered by us.

What we have just stated applies with equal force to the twelfth assignment, which is predicated upon the giving of the fourth, fifth, sixth, seventh, and eighth instructions. The giving of these instructions is assigned as error in the motion for a new trial in this language:

"5. The court erred in giving to the jury instructions numbers 4, 5, 6, 7, and 8, and all other instructions excepted to by the plaintiff."

One or more of these instructions, and especially the eighth, on the measure of damages, stated the law applicable to the facts proved, hence the entire assignment will not be further considered.

Another contention is that the court erred in not permitting the plaintiff to introduce evidence of his good char-

acter. There is some conflict in the decisions as to the competency of evidence to establish the previous good reputation of the plaintiff in an action for false imprisonment, where, as in this case, his general reputation has not been assailed. We shall not at this time attempt a review of the authorities. The better rule is that where no attempt has been made to show the plaintiff's reputation to be bad, he must rely upon the general presumption of good character. (*Cochran v. Toker*, 14 Minn., 385; *Fire Association v. Flemming*, 3 S. E. Rep. [Ga.], 420.) This certainly is the correct principle, where, as in the case before us, the defendant did not live in the same neighborhood with the plaintiff, and had but little acquaintance with him prior to the arrest. But it is said that Mallon had abundant time, after receiving the first information implicating plaintiff, and prior to the arrest, to make inquiries of the neighbors of Diers as to his habits, standing, and character, and that he was negligent in failing so to do. We do not think so. An atrocious crime had been perpetrated, and it was important that the officer should act promptly to prevent a possible escape of the person accused. He was justified in acting upon reliable information in his possession, which was sufficient to raise an honest belief in the mind of a prudent person of the probable guilt of the plaintiff. He was not required to make further investigation to ascertain if the accused was not in fact innocent.

It is argued that the verdict is not sustained by sufficient evidence and is contrary to law. The basis of this contention is the treatment which the plaintiff received at the hands of the sheriff at the time he was taken into custody and during his imprisonment. In *Atwood v. Atwater*, 43 Neb., 147, which was an action for false imprisonment, we had under consideration the liability of a police officer for making an arrest under a warrant, and it was held that if such officer acts oppressively in the execution of the process placed in his hands and unnecessarily abuses the person

arrested, he must answer therefor in damages. The rule is not different where the arrest is made without process. Was the plaintiff treated unnecessarily severe? It is undisputed that the sheriff put handcuffs upon him immediately upon his arrest, but the evidence is conflicting as to the length of time they remained on. The plaintiff's testimony is to the effect that they were not removed until Thursday after he was taken into custody, while the evidence on behalf of the defendants tends to show that the irons were removed for a short period a number of times prior to Tuesday, on which date they were taken off and not put on again, and that plaintiff at the time made no complaint about his treatment. It was also shown that plaintiff's feet were manacled, but here again there is a conflict in the proofs adduced as to how long the fetters were so left upon them. It is argued that there was no necessity for placing the plaintiff in irons, since he offered no resistance and at no time made any attempt to escape. It is said: "From all that appears to the contrary, the sheriff might have written to the plaintiff and he would have come in and submitted quietly to arrest and might have been tied to a tree in the jail yard with woolen yarn, in the safe assurance that he would be found there when he was wanted for examination." This may be true, and yet the sheriff was not at the time aware of it. He did not know that the plaintiff would not attempt to escape. Diers was charged with a heinous crime, which caused considerable excitement and commotion among the people of the county, and the sheriff had been informed that the plaintiff was a bad man. The evidence bearing upon the sheriff's treatment was submitted to the jury under these instructions:

"While an officer is bound to treat his prisoners with such kindness as may be consistent with security, and will not be warranted in employing any harsh or unnecessary restraint, yet it is his duty to use such reasonable precautions as the case requires to prevent escape, especially in ar-

rest for felony or offenses of great magnitude. His action in this regard is to be considered in the light of all the facts and circumstances proved by the evidence on the trial of the case, bearing upon the question of what means are reasonably necessary to keep the prisoner safe and secure.

"The jury are instructed that in order to constitute an assault and battery in this case it is necessary that the jury, from the evidence, find that the defendant Mallon had, at the time and place complained of, unlawfully used force and violence upon the person of the plaintiff in excess of what was reasonable and necessary under the circumstances to safely detain and secure the safe-keeping of the plaintiff. If the jury from the evidence find there was no excess of force or violence used by the defendant beyond what was sensibly necessary to safely keep the plaintiff, then the defendant would not be liable in this action; but if the jury from the evidence believe that the defendant Mallon did use any excess of force or violence beyond what was reasonably necessary to safely keep the plaintiff, then the defendant would be liable to the plaintiff for any injury or damage suffered by the plaintiff by reason alone and rising solely out of the use of such excessive force or violence wantonly or excessively inflicted."

Under these instructions, which are substantially the same as those approved by the supreme court of Michigan in *Firestone v. Rice*, 71 Mich., 377, the jury decided that the sheriff was justified in placing the plaintiff in irons. After a careful consideration of the evidence returned in the bill of exceptions we are satisfied that it sustains the verdict. The sheriff was not prompted to do as he did through malice or ill-will, but he acted in good faith, believing it was necessary to handcuff the plaintiff to prevent his escape. In the language of Morse, J., in *Firestone v. Rice, supra:* "Having reasonable cause for making the arrest, the question arises, was the officer justified in handcuffing the parties? We think the rule laid down by the circuit

judge a proper one. There must be some discretion reposed in a sheriff, or other officer, making an arrest for a felony, as to the means taken to apprehend the supposed offender, and to keep him safe and secure after such apprehension; and this discretion cannot be passed upon by a court or jury unless it has been abused through malice or wantonness or a reckless indifference to the common dictates of humanity. It must be found that the officer was unnecessarily rough and inhuman in his treatment of the person arrested, and without any view to prevent the escape of such person. It is not necessary, as claimed by the plaintiff's counsel, that the prisoner must be unruly, or attempt to escape, before he can be handcuffed, or do anything indicating a necessity for such restraint. Nor, in the event that he does nothing at the time of the arrest in the way of attempting to escape, or resisting the officer, is it necessary that he should be a notoriously bad character in order to justify the tying of his hands. There may be other and sufficient reasons, as it seems to me there were in this case, why such extreme measures should be resorted to in order to secure and safely lodge the prisoner. * * * That it turned out afterwards that the plaintiff was innocent of any offense, was neither a 'slippery' or desperate character, but an inoffensive and reputable citizen, and that he never had the remotest idea of trying to escape, cannot alter the rule which saves the sheriff harmless from an act which appeared, at the time it was done, to be both necessary and reasonable. The arrest of an innocent man is an indignity hard to be borne, and the tying of his hands with cords or irons is something that makes the blood run chill to contemplate; but both are indignities ofttimes without redress, and a necessary consequence of the due administration of justice in the suppression of crime. An officer is bound to act humanely, and cannot lightly and without reason either arrest or harshly treat a supposed offender, be he innocent or guilty. * * * The sheriff cannot stop,

State v. Thayer.

when the man is unknown to him, at the moment of arrest, to inquire into his character, or his intentions as to escape, or his guilt or innocence of the offense charged against him. His duty is to take him, to safely keep him, and to bring his body before a magistrate. If he does this without wantonness or malice, it is not for a jury to find that his precautions were useless and unnecessary in the light of after-acquired knowledge of the true character and intent of the accused, and to punish the sheriff in damages for what honestly appeared to him at the time to be reasonable."

After a careful consideration of the record and the able arguments of counsel, we are convinced that plaintiff has had a fair and impartial trial, and there being no reversible error committed by the trial court, the judgment is

AFFIRMED.

POST, J., not sitting.