ARTHUR J. MODLIN, APPELLEE, V. C. L. JONES & COMPANY
ET AL., APPELLANTS.

FILED JUNE 11, 1909.   No. 15,719.

1. **Master and Servant:** INJURY:  PLEADING:  CONSTRUCTION.   In an
action for damages for personal injuries caused by the breaking
and falling of an elevator upon which plaintiff was being carried
in the performance of labor on behalf of his employer, the plead-
ings set out in the opinion *held* to embrace the question of negli-
gence on the part of the employer in the matter of appliances
provided, or the want thereof, for the safety of persons using
the elevator in the course of the employment.

2. **Trial:** QUESTIONS FOR JURY.   All questions of fact and the weight of
the testimony of witnesses are, under proper instructions of the
court, for the consideration of the jury hearing the case on trial.

3. ———: EVIDENCE:  QUESTIONS FOR JURY.   Although a witness may
be contradicted by other witnesses, even of a greater number, yet
the testimony of such witness is for the consideration of the
jury, and the receipt thereof is not erroneous, nor can the court
say that the jury should ignore it.

4. **Appeal:** IMMATERIAL EVIDENCE.   Where a witness has been permitted
to testify to immaterial facts and his testimony throws no light
upon any controlling question involved, it will not require a re-
versal of the judgment, where it clearly appears that the testi-
mony given could have no effect upon the final decision of the
case and could work no prejudice to the losing party.

5. **Trial:** WITNESSES:  CREDIBILITY.   Plaintiff testified that, immedi-
ately upon the occurrence of the accident, a son of the owner of
the property where the accident happened remarked to such
owner, a defendant in the suit, "If you had fixed this when I
wanted you to, this wouldn't have happened," and defendant
"scowled and shook his head," but said nothing.   The evidence
was not objectionable and was for the consideration of the jury,
although denied by both father and son on the witness stand,
the jury being the judges of the credibility of the witnesses.

6. ———: ———: COMPETENCY.   There is no fixed rule as to what
previous training or experience is necessary to qualify one as an
expert witness.   The question as to his competency to testify is
primarily for the court upon objection being made.   If no general
objection is made to the competency of the witness, his testimony
goes to the jury who must be the sole judges of its weight.

7. Appeal: DAMAGES: MISSTATEMENTS OF COUNSEL. In the closing argument of counsel for plaintiff, he stated his claims as to the rule to be applied in the measurement of damages, and to which counsel for defendants objected as being a misstatement of the law. The objection was overruled, the court stating that the jury would be instructed as to the measure of damages. An instruction upon the subject was given. The verdict showed that the jury were not influenced by the contention of counsel. *Held*, That such contention, even if improper, did not vitiate the verdict.

8. Trial: SPECIAL FINDINGS. Where interrogatories requiring special findings were submitted to the jury, and their answers were not inconsistent with the general verdict, a new trial will not be ordered where upon immaterial subjects the jury answered they "did not know."

9. Appeal: CONFLICTING EVIDENCE. Where the evidence is conflicting, or where different minds might arrive at different conclusions from the facts proved, and the reviewing court might not have agreed with the jury in the first instance, the judgment of the trial court will not be reversed for that reason alone.

APPEAL from the district court for Adams county: ED L. ADAMS, JUDGE. *Affirmed.*

*Tibbets, Morey & Fuller,* for appellants.

*Samuel Griffin* and *J. W. James, contra.*

REESE, C. J.

This action was for damages resulting from personal injuries sustained by plaintiff while in the employ of defendants. There was a verdict and judgment in favor of plaintiff, and from which defendants appeal.

Plaintiff was an employee of defendants, and his duties at the time of the accident were to assist another employee, by the name of Dean, in conveying wagons and other farm implements from the first to the third floor of defendant's business house by means of an elevator. The day on which the accident occurred was the first and only day plaintiff labored for defendants. At the particular time of the accident plaintiff was assisting in taking sideboards of wagon-boxes, or wagon-beds, to the third floor,

using the elevator for that purpose. The boards were stood on end, leaning diagonally upon and against the bail of the elevator, and projecting above between two and one-half and three feet. Dean had charge of the elevator; plaintiff's sole duty being to assist in removing the material to and from it, except that it is claimed that plaintiff was directed to notify Dean when the bottom or platform of the elevator came within two or three feet of the third floor, so that the elevator might be stopped in its upward movement, and the boards be the more easily removed and stored away. There was some evidence that plaintiff did give such notice on trips made before the accident occurred, but not on the last one. Plaintiff testified, in substance, that, as they approached the point at which the elevator was to be stopped, he saw that Dean was trying to stop the car, and that the notice was not necessary. As the car approached the top of the elevator shaft, it broke loose and fell a distance of about 60 feet, carrying Dean and plaintiff with it, and plaintiff was injured. There is no dispute as to the occurrence of the accident, nor as to the extent of plaintiff's injuries. That he was seriously and permanently injured is clearly shown by the evidence, and not contradicted by defendants. He was about 26 years of age when hurt, and was a healthy, robust young man, depending upon his manual labor for a livelihood. His injuries have made him a cripple and an invalid for life, and render him incapable of ever engaging in his usual avocations. This is practically conceded, but it is contended that the injury was an accident against which ordinary prudence and care on the part of defendants could not guard, and that it was in no way caused or produced by any want of care or by negligence on their part; that the elevator was properly and well made and constructed; and that defendants were in no sense liable to plaintiff for the unfortunate accident, and should not be held therefor.

It is insisted by defendants that upon the trial plaintiff was allowed to introduce evidence upon facts not within

the issues made by the pleadings, and that the verdict of the jury is not sustained by sufficient evidence. Defendants contend that the petition does not contain sufficient averments to charge them with negligence, or to render them liable for the injury, and that the evidence of plaintiff that the elevator was not supplied with certain specific appliances was not within the issues made by the pleadings, and the admission thereof was prejudicially erroneous.

In order to an understanding of the questions presented, it is necessary that the substance of the pleadings upon the points of contention be stated. After the formal averments as to the employment of plaintiff by defendants, the character of the labor performed, the ownership of the business and property by defendants, that the latter's business, that of wholesale and retail dealers in hardware and implements, was carried on in a three-story building, it is alleged that at the time of the accident the defendants "owned and operated in the back part of said building an elevator (commonly called a freight elevator), used in carrying machinery, wagons, carriages, persons, etc., to and from the different floors of said building; that said elevator was run by a four horse-power motor, and that the movements of said elevator were controlled by the application of switches and brakes, the same being used to stop and control the speed of said elevator; that said elevator was also equipped with what was supposed to be an automatic clutch, and supposed to work in case said elevator should break loose, by said clutch dropping into the sides or uprights of said elevator, and thereby stopping the same"; that on the 5th day of June, 1906, plaintiff entered into the employment of defendants, and was to assist one W. H. Dean, also an employee, and who operated and handled the elevator, to load the same and transfer some machinery and wagons by means of said elevator to the upper story or floor of said building and there unload the same; that, while in the performance of said duties, it was customary and necessary for plaintiff

to get upon the platform of the elevator and be carried to the floor of the building where the machinery and wagons were being stored; that plaintiff was directed to work under the control and direction of Dean; that about the hour of 4 o'clock of said day, and while Dean was carrying and conveying some sideboards to wagon-beds to the upper story of the building, and without any fault of plaintiff and while in the exercise of due care on his part, plaintiff was carried to the top of said shaft by said elevator, where the same gave way, precipitating said elevator upon which plaintiff was standing to the basement of said building, a distance of about 60 feet, thereby injuring, bruising, mangling and permanently injuring him; that, as a direct result from said injuries, "plaintiff has been for about 50 days and still is bedridden; that during said time he has suffered intense pain and anguish; that he has had surgical operations, and has been continually since said injuries and still is under treatment"; that he has had to have a nurse at all times since said injuries, and has been totally deprived of the fruits of his labors during said time, and as he believes will always be. The petition continues as follows: "Plaintiff further says that his said injuries were wholly due to the wrongful, careless and negligent acts and omissions of the said defendants, and defendants were negligent in this, to wit, that said elevator has been in use a great many years, and poorly and improperly constructed, and is made out of poor and defective lumber, so that the same was continually getting out of order; that said elevator and machinery and appliances became old, worn, and defective and out of repair, and that by reason thereof the same was continually getting out of order, and that the said defendants allowed and caused the same to be cobbled by nonexperts, all of which was unknown to said plaintiff, but which were, or by the exercise of reasonable care might have been, known to said defendants in time to have repaired the same and prevented said injuries; and that, by reason of said defective elevator machinery and

appliances as aforesaid, said elevator became uncontrollable in its ascent, and failed to respond to the stops and brakes applied thereto, or used or attached to said elevator for safety in the case of any accident of this character, and thereby caused the injury mentioned; that the method employed in carrying and conveying said sideboards to the top of said building was the method usually and customarily employed in performing the same kind of work upon said elevator, and that plaintiff was acting under the express direction of the said W. H. Dean in occupying the position that he did occupy on said elevator, and the one necessarily and customarily assumed by said employee in the performance of said work, all of which were well known to said defendants."

Defendants answered, admitting that they were partners and engaged in business in the building as set forth, the existence and use of the elevator as alleged, "but not for the purposes of carrying persons"; that the elevator was run by a motor and controlled by the application of switches and brakes used to stop and control it, and that it was equipped with an automatic clutch; that plaintiff entered the employ of defendants at the time alleged, and was with W. H. Dean, who was in the employ of defendants, and engaged in the services as alleged, but denying that it was necessary for plaintiff to ride on the platform of said elevator; admitting that the elevator fell, but denying that it fell 60 feet, or that plaintiff "was required to act under the express directions of the said W. H. Dean, but allege that plaintiff and said Dean were fellow servants," and denying each and every allegation of the petition not admitted, qualified or denied. The affirmative allegations are as follows: "Defendants further allege that said elevator was, as far as human foresight was able to ascertain, in good, safe and proper condition to be safely operated; that the said Dean, who was at said time operating said elevator, had been thoroughly instructed in his duties in operating the same, and had for the space of two and one-half months from time to time

operated said elevator, knew the character, condition and operation of all its parts, and was considered by these defendants as a safe, trustworthy and competent person to operate the same. Defendants further allege that whatever injury plaintiff might have sustained by the fall of said elevator was not through any defect in said elevator or any of its parts, or its failure to respond to the proper operation of any of its parts, or to any negligence on the part of defendants or any of them. Defendants further allege that they and each of them frequently inspected said elevator and all its parts, saw that it was working properly and safely, and was competent and capable of doing the work for which it was used, and safe for the persons operating it or riding upon it; that defendants employed experts to overlook said elevator and to keep the same in proper condition to be safely operated, and defendants allege that at the time of the alleged accident said elevator, together with all its parts, was in a sound, safe and perfect condition, and that the accident complained of could not have happened except through the negligence of the plaintiff or his fellow servant W. H. Dean." The reply is a general denial.

While it is true that the petition might possibly have been more skillfully drawn, yet, construing the pleadings together, we are of the opinion that the issues formed embraced that of the care or want of care of defendants in furnishing reasonably safe appliances for the use of their employees while engaged in their service, and which included the usual and necessary safety appliances. The elevator in which the accident occurred had formerly been known as a hand freight elevator; that is, it was operated by what is called in the evidence as an endless cable, the movement being produced by pulling down or lifting up on the cable. Some time before the happening of the accident the power was so changed as to permit the elevator and its load to be lifted by an electrical "one-way motor." The appliance for cutting off the power was a "knife switch" operated by the use of a connecting rope

within easy reach of the person in control of the move-
ment of the car. The efficiency of the switch was ques-
tioned on the trial, but defendants contended and now
insist that, there being no specific averments as to the in-
adequacy of the switch, the subject was not within the
issues, and that the trial court erred in admitting any
evidence upon that subject. We are not able to adopt
this view. As it alleged that, "by reason of said defective
elevator machinery and appliances as aforesaid, said ele-
vator became uncontrollable in its ascent and failed to
respond to the stops and brakes applied thereto, or used
upon or attached to said elevator for safety in case of ac-
cidents of this character, and thereby caused the injury
herein mentioned," and as the answer contained the
affirmative allegation that "at the time of the alleged
accident said elevator, together with all its parts, was in
a sound, safe and perfect condition," we think the whole
field of imperfect construction of said elevator and its
appliances and parts was a proper subject of inquiry.

It is next insisted that plaintiff made no serious at-
tempt to prove the negligence alleged in the petition, ex-
cept by the testimony of the witness Dean, and that his
testimony was rendered valueless by the fact that in
another suit he had testified that the alleged defects in the
elevator were unknown to him. This refers to a petition
which he had filed in a yet untried case wherein he had
brought suit for damages resulting in an injury received
in the same accident involved in this action; he being on
the elevator as its operator at the time it fell. Without
stopping to discuss the merits of this contention as bear-
ing upon the weight of his testimony, it must be sufficient
to say that that was a matter for the consideration of the
jury after a comparison of the statements in connection
with the explanations, if any, which might be offered.
He testified on the trial of this cause that he did not know
what made the elevator fall. This, however, would not
necessarily detract from the weight of his testimony upon
either feature of the case. If the petition which was

offered and received in evidence is true, he was found at the bottom of the elevator shaft with a broken leg, and it is hardly probable that he made any investigation soon thereafter for the purpose of ascertaining the cause of the accident. The examination of the question as to whether the verdict was supported by sufficient evidence must be reserved to a later consideration herein.

It is insisted that the testimony of two witnesses, Hoagland and Osgood, was improperly admitted. Hoagland's testimony was objected to on the ground that he was not shown to be a competent witness, and that his evidence was not within the issues. As to his competency to testify to the facts stated by him, there would seem to be no question, as he testified only as to what he observed, and showed that he had had experience with elevators for about 20 years. His testimony consisted in part in giving a history of the elevator in question with which he was quite familiar. The proof showed that certain parts of the old elevator were used in the new one at the time the power plant was installed. The defects to which he referred were subsequently shown by defendants to have been corrected, but that would not render the admission of his evidence upon that subject erroneous.

The testimony of Osgood is complained of, but no motion was made to withdraw it from the jury. It was of little, if any, importance. He was not offered as an expert. His testimony was upon immaterial matters, and could work no possible prejudice. It need not be further noticed.

Complaint is made of a part of the testimony of plaintiff. The evidence shows that the firm of C. L. Jones & Company consists in part, if not in whole, of C. L. Jones, the father, and Arthur, a son. Another son, Carl Jones, was engaged in and about the business, but was not a member of the firm. In detailing the circumstances of the accident and his condition soon thereafter, plaintiff stated that immediately after the fall he was lying on the floor of the elevator and some one was holding his

head up.   He testified that "it was one of the young
Joneses, but I do not know which one it was"; that C. L.
Jones, the father, was also present; that the young man
addressed his father and said: "If you had fixed this
when I wanted you to, this wouldn't have happened."
Upon being asked what the elder Jones said, his answer
was: "He kind of scowled at him and shook his head.   I
didn't hear him say anything."   The question calling for
this answer was objected to as "immaterial, incompetent,
not binding on the defendants, the Joneses," which objec-
tion was overruled, and to which defendants excepted.   It
is contended that the ruling of the court upon this ob-
jection was erroneous, and that the admission of the
evidence was prejudicial to defendants, and calls for a
reversal of the judgment.   The whole of the statement
was denied by both defendants and the younger Mr. Jones.
If it be conceded that the testimony was open to the ob-
jection made, we are not prepared to say that its admis-
sion was so prejudicial as to demand the reversal of the
judgment.   If the conversation occurred, it was immedi-
ately after the elevator had struck the bottom of the
shaft, and was so clearly connected with the accident as
to be substantially a part of the event.   If the testimony
was true (and of that the jury were the sole judges), it
was competent.   The fact that defendant made no audible
answer, if he heard the remark, would not exclude the
evidence, since his action as described by plaintiff would
clearly indicate that he heard it and did not deem it a
proper subject of discussion at that time.   It may be said
that the preponderance of the evidence is against the fact,
but that is not for the court.   If the jury believed the
testimony of plaintiff upon that part of the case, it was
for them to decide as to the reason of defendant for his
silence and conduct, as well as its probative effect.

W. H. Harris was called as an expect witness for plain-
tiff.   He testified that his business at the time of the trial
was that of chief engineer at the asylum near Hastings;
that he had held the position for seven years, and had been

following the business of engineer for 28 years, and had had the opportunity to observe the mechanism of elevators with reference to appliances.   He was then interrogated as to the mechanism of elevators by which provision was made for automatically checking and stopping their ascent and descent.   This was objected to as "immaterial, irrelevant and incompetent, not within the issues."   This did not present the question of the competency of the witness as an expert, or that sufficient foundation had not been laid to permit him to testify.   A number of objections of similar import were made to questions propounded, in two of which the words "witness incompetent" occur, and in two others "no foundation laid" are found.   There was no general objection to the competency of the witness as an expert, nor any request for further preliminary examination as to his knowledge or experience.   Upon the cross-examination, his ability as an engineer was pretty well tested, and a number of questions of a hypothetical nature were propounded to him, but no motion was made to withdraw his testimony from the consideration of the jury.   It is now contended that the witness "was absolutely incompetent" as an expert, and that his testimony was improperly admitted.   While the "foundation" for his testimony was not laid with the care which the nature of the case seemed to require, yet, in view of his whole examination and the condition of the record, we must hold that the weight of his testimony was for the consideration of the jury, and that no affirmative error appears to have been committed by the court. It is also contended that an examination of the condition of the disconnecting switch and appliances, made soon after the accident, demonstrated the entire untrustworthiness of the evidence by which it was sought to be shown that they were defective.   This, with many other contentions, must be disposed of by the suggestion that all questions of fact were for solution by the jury.

In defendant's brief it is said:   "An important point in

this case, and one that should not be overlooked, is the fact that plaintiff, Modlin, was not in any way required to ride on the elevator except for the one purpose. That purpose would be to call out when to stop. The evidence is undisputed that he was not helping to operate the elevator," that there were stairs to all the floors, and, if Dean invited plaintiff to ride and it was not necessary for him to do so in the performance of his duties, then plaintiff rode at his own peril. It may be true that there was no requirement expressed that plaintiff should be carried up and down the elevator, but it is equally true that the work then being performed rendered it natural and proper that the persons engaged in the labor should pass from floor to floor with the material to be stored. It could not be expected that a person should load the elevator at the lower floor, and each trip climb the stairs and cause the delay in unloading which would necessarily result. The trips were frequently made, and those engaged in loading and unloading would be expected to accompany the load. There can be no doubt that the occupancy of the elevator would under the circumstances constitute a part of the labor to be performed, and the questions submitted to the jury were as to the care of the defendants in furnishing reasonably safe appliances for the protection of those engaged in the labor of the house, and the want of care, if any, on the part of plaintiff. There must have been some defect in the safety clutch, or it would have arrested the downward flight of the elevator at some point in its descent.. The theory advanced upon the trial that the passage of the cable over the drum and its unwinding would be sufficient to prevent a readily working clutch from checking the fall of the elevator in the speed of its descent might not appeal to the jury as sufficient evidence that that part of the machinery was of any material value.

Objection was made to a portion of the closing argument made by counsel for plaintiff. The part objected to was a probable inaccurate computation of damages plaintiff was entitled to recover. It is true that counsel became

quite liberal in estimating the amount of plaintiff's damages. Upon a basis of $50 a month for 36 years, plaintiff's expectancy of life, the attorney appeared to have satisfied himself that plaintiff was entitled to a verdict of $21,000. Upon the objection being made, the court remarked that the jury would be instructed as to the measure of damages, and overruled the objection. As the verdict of the jury was for less than one-fourth of the amount contended for in the argument and one-fifth of the amount claimed in the petition, it cannot be said, therefore, that the forensic effort had much effect upon the minds of the jury, at least in the way of increasing the verdict. There are cases which hold that wrongful contentions by counsel as to the measure of damages require a reversal of a judgment, but we think all such are where it was apparent from the amount of the verdict that the jury were misled thereby, and that the error was to the prejudice of the losing party, but no such presumption can arise here.

Upon the subject of the measure of damages the court upon its own motion instructed the jury as follows: "If you find from the evidence and these instructions that the plaintiff is entitled to recover, it will be your duty to fix and ascertain from the evidence the amount to which he is entitled. You should carefully examine all the evidence as to the nature, character and extent of the injury and the result, whether the disability, if any, resulting from the injury was permanent or temporary, its extent, whether total or partial. If any permanent disability resulted, you should consider plaintiff's age, his reasonable expectancy of life, how much money he could earn as he was before the injury, how much he could earn, if any, with his reduced capacity, if any there was, on account of the injury, remembering that no reduction of capacity on any other account is to be considered, and allow him a reasonable compensation for any loss of time and capacity resulting from the injury. You should allow him such sum as would fairly and reasonably compensate him for moneys expended, for medical hire, nurses and medi-

cines, or for such reasonable sum as would compensate him for any obligations entered into in regard to such services. You should also allow him for his suffering, pain and anguish, if any. The law lays down no rule for the estimating of his damages on this account, but leaves it to your sound judgment, and you should allow him such amount as in your best judgment would be just and right, under the circumstances, not exceeding in all the amount claimed, to wit, $25,000." This instruction fairly covered the question, and is not objected to as a misstatement of the law, but it is contended that it does not fairly cover and correct the alleged injury inflicted by the remarks of counsel. We find no instruction in the record covering the question proffered by counsel for defendants, and therefore, following a long line of decisions in this state, must hold that error cannot be predicated upon the failure of the court to instruct more fully.

A number of instructions upon different phases of the case were asked by the defendants, but were refused, probably because sufficiently given by the court upon its own motion. We have examined them all, and can find no error in the action of the court. To set out and examine each could serve no good purpose. The instructions given appear to have covered the whole case, and must be held sufficient.

Thirty-four questions for special findings were submitted to the jury, some of which were upon material subjects, and others not. Some were answered properly by "Yes" or "No" according to the finding, and some were, with equal propriety, answered, "Don't know." We have all carefully examined the interrogatories submitted, and find that the answers given by the jury are not inconsistent with the general verdict and are of the opinion that they need not be further noticed. The findings that the proximate cause of the accident was the failure of defendants to properly equip the elevator with an automatic switch or appliance to prevent it going above the third floor, that the clutch was not in proper working order and

did not arrest the descent of the elevator, that the rope pulled by the operator of the elevator for the purpose of disconnecting the power did not respond, were sufficient, in so far as they were concerned, to justify the general verdict; but the finding that the cause of such failures, or rather the cause of the proximate cause, was unknown to the jury could not have the effect of impairing the other findings or vitiate the verdict.

To the mind of the writer the most serious question involved in this case is whether or not the evidence is sufficient on questions of fact to impose a liability upon defendants for this most unfortunate accident. Had we been called upon to decide the case upon its merits in the first instance, our conclusion might not have been in accordance with the verdict, but the case appears to have been fairly submitted, and the conclusion of the jury as the triers of fact will have to stand.

The judgment of the district court is

AFFIRMED.