## BASSINGER v. UNITED STATES FIDEL-ITY & GUARANTY CO.*

### No. 9254.

Circuit Court of Appeals, Eighth Circuit.
April 13, 1932.

Leonard A. Flansburg, of Lincoln, Neb., (George A. Lee, of Lincoln, Neb., and Frank W. Bartos and Otto E. Placek, both of Wilber, Neb., on the brief), for appellant.

Roland Max Anderson, of Lincoln, Neb. (Carl E. Sanden and Bernard S. Gradwohl. both of Lincoln, Neb., on the brief), for appellee.

Before Stone and Kenyon, Circuit Judges, and Cant, District Judge.

STONE, Circuit Judge.

This is an action on a sheriff's bond for personal injury received in connection with an attempt by the sheriff to arrest appellant in the mistaken belief that he had committed a felony. This arrest was without warrant, and the action of the sheriff was based upon information which he had received from the sheriff of an adjoining county. The sheriff and the surety filed separate demurrers to this petition as not stating a cause of action. The demurrer as to the sheriff was overruled and as to the surety was sustained. From a judgment of dismissal as to the surety, plaintiff declining to plead further, this appeal is brought.

The questions presented on this appeal may be stated thus: Where a sheriff in Nebraska assumes to make an arrest for a felony without a warrant or without having viewed the crime, is it necessary to allege that he acted upon reasonable belief that the plaintiff had committed the crime in question in a petition for damages against the sureties on his official bond, and if so, does this petition contain such allegations?

There is considerable confusion of learning in the decisions concerning this matter. This is revealed in the digests (35 Cyc. p. 1903 X, C, 6; p. 1917 X, D and p. 1943 X, D

*Rehearing denied June 17, 1932.

21 and 22) with the cases shown in the notes in connection with these references. A clear expression of this general situation in the decisions is found in 24 Ruling Case Law, page 959, § 54 and page 965, §.59. However, it is unnecessary for us to enter into the general field of decisions. This bond is a Nebraska contract made in connection with a state officer of the state of Nebraska. It would be very unfortunate if the liability upon bonds required by the statutes of a state and covering its officers should be subject to one rule in the courts of that state and to another in the federal courts. Whether, ordinarily speaking, the construction and application of bonds is a matter of general law or not, we think that, in respect to official bonds on state officers, the law of the state should be followed by federal courts. If this be true, the important matter is to discover the rule in Nebraska. For our purposes, it is fortunate that the exact verbiage of this bond seems to be that of a form used· for years in the state of Nebraska in official bonds and which has been several times construed. Whatever may be the rule elsewhere, in Nebraska it is firmly established that an official bond covers only such acts or failures to act as come within the legal duties of the officer; in other words, such as some of the decisions term virtute officii, as distinguished from acts done colore officii merely. Huffman v. Koppelkom, 8 Neb. 344, 1 N. W. 243 (same case on later appeal, Kopplekom v. Huffman, 12 Neb. 95, 10 N. W. 577); Ottenstein v. Alpaugh, 9 Neb. 237, 2 N. W. 219; Kendall v. Aleshire, 28 Neb. 707, 45 N. W. 167, 26 Am. St. Rep. 367; State v. Holcomb, 46 Neb. 612, 65 N. W. 873; Diers v. Mallon, 46 Neb. 121, 64 N. W. 722, 50 Am. St. Rep. 598; State v. Moore, 56 Neb. 82, 76 N. W. 474; Milligan v. Gallen, 64 Neb. 561, 90 N. W. 541; State v. Porter, 69 Neb. 203, 95 N. W. 769; Comstock-Castle Stove Co. v. Caulfield, 1 Neb. (Unof.) 542, 95 N. W. 783. And this doctrine has been applied in the Nebraska decisions in actions on bonds of sheriffs. See citations in next paragraph. Also, what is meant in those decisions by virtute officii is fairly clearly defined in the above citations as being something which lay within his duty to do or not to do as a sheriff.

In so far as arrests by the sheriff are concerned, the law of Nebraska makes it the duty of a sheriff to arrest for a felony upon a warrant or upon view of the commission of the felony or in an honest belief, based upon reasonable grounds, that the person arrested has been guilty of a felony. If the sheriff attempts an arrest where any of the above three situations exists, he is acting with authority and within his official status, and, therefore, his official bond is responsible for such action. The decisions which announce this doctrine are Huffman v. Koppelkom, 8 Neb. 344, 1 N. W. 243 (same case on a later appeal, sub nom, Kopplekom v. Huffman, 12 Neb. 95, 10 N. W. 577); Kendall v. Aleshire, 28 Neb. 707, 45 N. W. 167, 26 Am. St. Rep. 367; Diers v. Mallon, 46 Neb. 121, 64 N. W. 722, 50 Am. St. Rep. 598, and see Nelson v. State, 33 Neb. 528, 50 N. W. 679 and Halsey v. Phillips, 104 Neb. 648, 178 N. W. 218 (which were not actions upon bonds, but which defined the duties of arresting officers), and Nelson v. State, 33 Neb. 528, 50 N. W. 679 (a watchman).

From the above statements and citations, it is clear that it was necessary, to bind the surety, to allege facts in this petition to the effect that this sheriff honestly acted upon a reasonable belief that the persons injured by him in the attempted arrest had committed a felony.

The remaining inquiry is whether such allegations are present in this petition. This action was brought against the appellee and the sheriff, Carl Ryder. Acting with Ryder at the time of the shooting complained of was his deputy, Howard McCallum. The pertinent allegations of the petition are as follows: "That said defendant and said McCallum at the time of the shooting by them of the plaintiff as aforesaid were in search for and attempting to arrest a felon who had committed the crime of stealing an automobile in Auburn, Nemaha County, Nebraska, and who was then in possession of said stolen automobile and who was attempting to transport the same to the State of Iowa and to escape with the same by way of State Highway No. 75 proceeding northward from Auburn, Nebraska, to Nebraska City, Nebraska. That plaintiff is unable to state whether said defendant or McCallum at said time possessed a warrant for arrest. That earlier in the day and only a short time before said shooting of plaintiff an automobile had been stolen in the City of Auburn, Nebraska, and shortly prior to the shooting of said plaintiff the then sheriff of Nemaha County, Nebraska, and the police officers of Auburn, Nebraska, all being responsible persons whose duty it was to notify the defendant Ryder and said McCallum of the commission of said crime, and who were fully entitled to solicit the aid of said defendant and said McCallum by telephone, informed and notified said de-

fendant and McCallum of the theft of said automobile, also notifying said defendant and said McCallum that the person who had stolen the same was in company with three or four other persons and that the same was being driven northward from Auburn, Nebraska, on Highway No. 75 toward Nebraska City, Nebraska, and further instructed said defendant and McCallum to search for said automobile on said highway and to be on a lookout for the same, and if found to forthwith seize the same and arrest the persons who had committed said theft and that said sheriff of Nemaha County and the said police officers of Auburn, Nebraska, who so advised and instructed said defendant and said McCallum were personally known to and well acquainted with said defendant and said McCallum and gave said instructions and information in their own capacity as sheriff and police officers of Nemaha County, Nebraska, to the defendant Ryder and said McCallum as sheriff and deputy sheriff respectively of Otoe County, Nebraska, and said defendant Ryder and said McCallum relied on such information and instructions and immediately began search for said stolen automobile. That all of the above occurred after darkness had fallen on said day. That plaintiff and the other occupants of said Studebaker automobile that evening had been near Auburn, Nebraska, and were driving northward on said Auburn-Nebraska City highway towards Minersville, Nebraska. That said Highway No. 75 on which said shooting occurred was a graveled highway but that the license plates and rear light on the car in which plaintiff was riding were covered with mud and were obscured. That the said Studebaker automobile very closely resembled the one which had been stolen as aforesaid in color, size, style and general appearance and had reached a point at the time of said shooting on said highway about where the stolen automobile would have been had said stolen automobile been driven from Auburn to said point as stated by said sheriff and police officers of Nemaha County. That said defendant Ryder and said McCallum were driving in the rear of the Studebaker car in which plaintiff was riding and that the driver of the car in which plaintiff was riding shortly before the shooting as aforesaid met another automobile coming from the opposite direction, the headlights of which were so bright that same blinded the sight of the occupants of the said Studebaker car requiring the driver thereof, for safety sake, to bring his car almost to a stop to wait the passage of said approaching automobile; that

after said car's passage, said Studebaker car was again started and shortly afterwards the said defendant Ryder and said McCallum who had caught up with said Studebaker car when it slowed down for said approaching car, drove up behind said Studebaker car commanding 'stop that car!' That upon hearing such command the driver of said Studebaker became alarmed and continued up the road accelerating the speed of said Studebaker car and again a command was given, 'stop that car!' That thereupon one of the occupants of said Studebaker car remarked 'Step on it!' meaning however, for the driver to apply the brakes on said car; that because of the dilapidated condition of said brakes said car could not be immediately stopped and traveled about 200 feet after the said first command although said driver attempted to stop said car in compliance with the second command and upon said car not stopping immediately, the defendants opened fire with their guns shooting the plaintiff as aforesaid. That said defendant Ryder and said McCallum upon noting the presence of said Studebaker car on said highway and at a point thereon where the stolen automobile would have been as reported to said defendant and said McCallum noting that said Studebaker car fitted the description of said stolen car, that it was occupied by four persons, being unable to read the license plates on said car because of the mud on same and noting that the tail light and license plates were covered with mud although the road itself was graveled, noting that said car failed to stop on being commanded, but instead accelerated in speed, believed, that the said Studebaker car was the car which had been stolen in Auburn as aforesaid and that the occupants thereof, including plaintiff, were the thieves who had stolen it, and said defendant Ryder and said McCallum at said time were attempting to arrest plaintiff and the other said occupants and seize said car. That after the shooting of plaintiff by said defendant and said McCallum said Studebaker car was finally stopped, and said defendant Ryder arrested plaintiff and the other occupants and then, upon learning who said plaintiff and other occupants were, released them, at the same time stating that they had made a mistake, that they believed that said Studebaker car was the stolen car, that it was dark and they were unable to read the license plates and noting that said car did not immediately stop upon being commanded but instead increased its speed and that having heard the remark of one of the occupants to 'Step on it,' they had been instructed by

the Sheriff of Nemaha County and the police of Auburn, Nebraska, to search for such a car and arrest the occupants and that by reason of all of the above that they believed said Studebaker car was the one previously stolen and that plaintiff and the other occupants were the thieves and that they were trying to escape."

We think these quoted allegations are a statement that the sheriff acted in an honest belief, based upon reasonable grounds, that the persons he was endeavoring to arrest were guilty of a felony. In this situation it was his duty to make the arrest. In so doing he was acting by virtue of his office, and his surety is liable for such action. Under this construction and the quoted allegations of the petition, the only issue tendered as to liability is excess of force used in making the arrest. That is dependent upon all the circumstances and must be judged from the reasonable appearance of the situation to the sheriff at that time.

The judgment is reversed, and the case remanded for a new trial.